# David P. Clay v. The Pennoyer Creek Improvement Company.

*Eminent domain: Improvement of navigable rivers: Appointment of commissioners: Final order: Certiorari.* In proceedings under the statute to condemn lands for improving the navigation of rivers; the order appointing commissioners to determine the necessity of the taking and to ascertain the damages, etc., is not interlocutory merely, but is final so far as any action by the court is concerned, and may be reviewed on *certiorari.*

*Improvement of navigable rivers: Statute construed: Private streams.* The statute in question contemplates the improvement of navigable rivers, and not the creation thereof out of creeks and streams which in their natural state are in no sense navigable; and it is questionable whether it is applicable at all to streams strictly private, as such statutes are usually not to be enlarged by intendment.

*Eminent domain: Petition: Jurisdiction.* The petition in such proceedings is jurisdictional, and must set forth all the facts necessary to show that the petitioning corporation is authorized to make the proposed improvement, and has taken all the necessary preliminary steps.

*Eminent domain: Improvement of navigable rivers: Petition: Dams: Consent of supervisors.* Such a petition, averring that the stream is a navigable one and that the improvements contemplated include three dams, must allege the obtaining of authority from the board of supervisors to make the same, as they alone under the constitution (*Art. XVIII.*, § 4) can authorize the bridging or damming of navigable streams; and the allegation of the procurement of the assent of the governor and attorney general and the approval of the board of control of the St. Mary's Falls Ship Canal, as required by the statute, does not suffice in this particular, but that requirement is an additional one.

*Improvement of navigable rivers: Statute construed.* There is a fatal defect in the statute under consideration, in that it makes no provision for the appointment of commissioners, and does not prescribe their duties, except by reference to certain sections of the plank road act, which are not broad enough to meet the requirements of this statute.

*Legislation: Adopting by reference sections of another act: Construction.* A statute thus adopting by reference parts of another statute must be construed precisely as if such adopted provisions had been embodied in it; and such a reference to a section of another statute cannot broaden or enlarge the scope of the language of such section beyond what it would import if literally reenacted in the new statute in the place it was designed to fill.

*Heard April 20.     Decided June 6.*

*Certiorari* to Probate Court of Newaygo County.

*Champlin & Fitzgerald,* for plaintiff in *certiorari.*

*Hughes, O'Brien & Smiley,* for defendant in *certiorari.*

MARSTON, J:

Defendant in error is a corporation formed under "An act to authorize the formation of corporations for the purpose of improving the navigation of rivers," approved April 5th, 1869, being *chapter 85* of the *Comp. Laws.*

Upon the 10th day of January, 1876, a petition was filed on behalf of said corporation in the probate court of Newaygo county, praying the court to appoint three commissioners to ascertain and determine whether it was necessary to the public interests to take certain lands therein described, owned by David P. Clay, for the purpose proposed in said petition, and if so, to ascertain and determine the amount of damages therefor.

The petition set forth the organization of the corporation, and that it was formed for the purpose of improving Pennoyer Creek; that the corporation had obtained the consent in writing of the governor and attorney general to the proposed improvement; that the necessary maps and plans had been submitted to and approved by the board of control of St. Mary's Falls Ship Canal; that in pursuance of their organization they had constructed three dams across said creek, and had at great expense cleared the stream of certain obstructions, also where necessary the bed had been deepened and straightened; that the stream is, and was before such improvements were made, a navigable stream, but that the practical navigation thereof was obstructed, which rendered it necessary to utilize and control the water in a lake at the head or source of the stream; that there were large quantities of pine along and around said stream and lakes which could be most economically got to market in no other way, and that the improvements made and contemplated would benefit the entire stream and the navigation thereof; that the improvements proposed would affect certain therein described lands, the property of said Clay, in that the water in said stream would be raised and backed up, and the use of said stream for water-power purposes be

lost to the owner of said lands, which would at times be flooded, and that an easement therein or in a portion thereof was and would be necessary for the public use. The petition also alleged that they had attempted to agree with Clay upon the amount of compensation, but could not. Upon filing this petition, the 7th day of February, 1876, was fixed for the hearing thereof, and notice given by publication. At the time fixed, Clay appeared and filed objections to the jurisdiction of the court, which were overruled. An answer was then filed, a hearing had and commissioners appointed, when the proceedings were removed to this court by *certiorari*.

An objection was taken on the argument, that the writ of *certiorari* was improvidently issued, the order of the probate court being merely interlocutory. We do not so consider it. The appointment of the commissioners by the court was one of the essential steps in the case, and was, so far as that court was concerned, final. The commissioners, after being appointed, proceed independent of the court in the performance of their duties, and after they have made the necessary examination and agreed upon a decision, they are to make and sign a report of their doings and file the same with the clerk of the court by which they were appointed, and which, without any action of the court whatever, is final and conclusive upon all persons who shall not, within fifteen days thereafter, make and file with the clerk a motion to set the same aside. The proceedings upon this motion cannot well reach the question of their appointment. We think a party is not bound to wait, although he may do so, until after the commissioners have acted and made a report which has been confirmed, before testing the jurisdiction and power of the court to appoint them, but may do so at once upon the appointment having been made.

A number of interesting and important questions were raised and discussed, but as there are fatal objections to be met with at the outset in this case, and as it would seem that additional legislation will be necessary in order to per-

fect the statute under which this corporation was organized, and the proposed improvement authorized, we do not consider it proper to discuss all of them at this time, as they will likely be considered and removed should the legislature undertake to remedy the defects pointed out.

The act under which this corporation was formed, and the proceedings in this case taken, seems to contemplate the improvement of navigable rivers, and not the creation of navigable rivers out of creeks or streams which could not in their natural condition be considered "navigable in any sense of the term. The title of the act is to authorize the formation of corporations for the improvement of navigable rivers." The first section authorizes persons to associate for the purpose of improving the navigation of any river in this state. Indeed, this question or idea of improvement of navigable rivers runs all through the act. Whether, therefore, it applies to streams strictly private, might become important, as the powers granted by such statutes are not usually to be enlarged by intendment. But this is a question we need not pass upon in the present case.

The petition is jurisdictional, and must set forth all the facts necessary to show that this corporation is authorized to make the proposed improvement, before it can ask for the appointment of commissioners to condemn lands for such purposes. It must show, or at least allege, the organization of a corporation; that it has obtained the approval and assent of the necessary officers and boards to make the proposed improvements; that certain lands are necessary in making such improvements; that they have attempted to treat with the owners of such lands and have been unable to agree, and therefore ask for the appointment of commissioners. And a failure to allege that they have taken all these necessary steps will be fatal, and will give the court no jurisdiction in the premises. The petition upon its face must show a substantial compliance with and adherence to the course prescribed by the constitution and statutes relat-

ing thereto.—*Kroop v. Forman, 31 Mich., 145; Powers' Appeal, 29 Id., 504; Cooley's Const. Lim., 528.*

The petition alleges that "the said Pennoyer creek is a navigable stream, and was such before the improvements hereinbefore enumerated were made;" that the contemplated improvements are the deepening and straightening the stream and the construction of three dams across the stream, which will cause the water in said stream to be raised and backed up, and the use of the stream for a water-power be lost to the owner of the lands, and that said lands or portions thereof will sometimes be flooded. It being thus alleged that Pennoyer creek was a *navigable stream,* the petition should have alleged affirmatively, that the corporation had obtained authority from the board of supervisors of Newaygo county to dam this stream. The constitution is clear and emphatic that "no navigable stream in this state shall be bridged or dammed without authority from the board of supervisors of the proper county under the provisions of law." —*Article XVIII., § 4.* There is no allegation that such authority was obtained. The petition does set forth the assent of the governor and attorney general, and the approval of the board of control of the St. Mary's Falls Ship Canal, as required by the act. But this assent and approval is something additional to the authority of the board of supervisors. The legislature did not intend the approval of the state officers to take the place of, or do away with, the authority of the board of supervisors. Any such attempt would have been unconstitutional, and this we cannot attribute to the legislature.

There is also, we think, a fatal defect in the act itself. The act does not provide for the appointment of commissioners, or point out their duties, except by reference to sections thirteen to twenty-five inclusive, of an act entitled "an act to provide for the formation of companies to construct plank roads," approved April 8, 1851.

While we do not question the right or power of the legis-

lature to thus refer to the provisions of another statute, and render them applicable and binding as though incorporated and re-enacted in the act under consideration, yet such a method of incorporating certain sections of previous statutes in subsequent acts, must be confined to cases where the sections so referred to are germane to the latter act; where it will not be necessary that parties should either omit from or add important words or provisions to the sections referred to in order to render them applicable. When such changes become necessary, it is leaving to each party acting under the statute the power to change it to suit his convenience, and thus to legislate for himself. And when he has done so there is no certainty at all that the legislature, had its attention been specially called thereto, would have made like changes, or if it had, that the act would have become a law by receiving the approval of the governor.

The plank road act referred to authorizes corporations formed thereunder to enter upon and take possession of and use such lands as may be necessary for the purpose of constructing and maintaining thereon its road, toll houses, gates, fixtures and appurtenances. And the sections referred to authorize commissioners to be appointed "to ascertain and determine whether it be necessary to the public interest to take such lands for the proposed road, and if so, to ascertain and determine the amount of damage therefor." They are to "hear any reason that may be deemed pertinent, which may be urged for or against the necessity of constructing such road, or the necessity of taking therefor any lands of any person *through which the same may pass,* and they may take any testimony having a bearing upon the question of such necessity, and in respect to the amount of damages to any person or persons for the taking of any such lands for the purposes aforesaid."

Section thirteen of the act for the improvement of rivers prescribes the powers of corporations in making their improvements.—*Comp. Laws,* § *2728.* The third subdivision of that section is as follows: "To divert into such stream

34 MICH.—27.

to be improved waters from any lake or lakes in the vicinity thereof, by canals to be constructed for that purpose; to divert the water from the present channel of the stream to be improved by cutting across bends in said river; to flood lands by constructing the necessary dams, according to the plans approved as aforesaid, and to enter upon, take, and use any lands which may be necessary for the purpose of constructing and maintaining such works and improvements, provided that the necessity for such diversion of the water, flooding of lands and of taking such lands for such purposes, and the damages to be paid therefor, in each case of diversion of water, flooding of land, or taking of the same, shall be ascertained, and such damages paid, as provided for in section thirteen," etc., of the plank road act referred to. It is very evident that for commissioners to ascertain and determine whether it would be necessary to the public interest to take any lands through which the proposed improvement would pass, and if so to ascertain and determine the amount of damages therefor, would fall far short of meeting all the various and complicated questions which would necessarily arise where the corporation sought to carry out the very important powers given them in the third subdivision above quoted. To appoint commissioners to hear any reasons that might be deemed pertinent against the diversion of the waters of lakes, or of rivers, and many others which would arise, and yet confine such reasons and testimony to the necessity of improving the navigation of the river, would be to confine them to the question of perhaps minor importance.

The improvement might be a necessity, but the means proposed to accomplish that end wholly unnecessary. Yet we do not see how the inquiry can be broader, without enlarging the inquiry authorized by the sections referred to in the plank road act.

The sections referred to must be treated as though they had been re-enacted at length in this act, and without any changes having been made therein. Had this been done,

CLAY *v.* PENNOYER CREEK IMPROVEMENT COMPANY.

then the inquiry of the commissioners would have been limited as we have just stated.    A reference merely to a section of another statute, in this manner, can no more broaden it or enlarge its scope than could its literal re-enactment in the new statute in the place it was designed to fill.    In neither case, without some change in the phraseology, can its provisions be materially enlarged, while it may very materially limit the effect of the act of which it has thus become a part.—*Mok v. Detroit Building etc., Co., 30 Mich., 511; United States v. Bassett, 2 Story, 403.*

Without pursuing this question further, or referring to any of the other questions raised, we are of opinion that the proceedings in the probate court appointing commissioners should be quashed and held for naught, with costs to plaintiff.

The other Justices concurred.