CITY OF BIG RAPIDS v. BIG RAPIDS FURNITURE MANFG. CO.

1. EMINENT DOMAIN — BIG RAPIDS CHARTER — CONSTRUCTION — CHANGING STREET GRADE.

Where chapters 36 and 40 of the charter of the city of Big Rapids are practically identical with chapters 22 and 25 of Act No. 215, Pub. Acts 1895, and section 7, chap. 36, of the charter, referring to the changing of an established grade in a street, provides that compensation therefor shall be ascertained by a jury as provided in said charter, and chapter 40 provides the only jury method for having a jury ascertain such compensation, held, that chapter 40, which gives the right to proceed under the

general condemnation laws of the State, is adopted by reference in its entirety, and the city cannot, in proceedings to determine the compensation to be paid to adjacent owners in changing the established grade of a street, select such of the provisions of that chapter as suit its convenience and reject others.

2. SAME—STATUTORY PROCEEDINGS—PETITION—JURISDICTION.

Such proceeding being statutory, the petition should show on its face all that is necessary to bring the case within the statute to confer jurisdiction.

3. SAME—CHANGE OF STREET GRADE—LEGISLATIVE POWERS — NECESSITY FOR CHANGE.

The legislature may regulate by statute the changing of the grade of a street and provide that, when adjacent property owners have made improvements in conformity with the established grade, such grade shall not be changed until a jury shall have determined the necessity for the improvement, the necessity for taking by change of grade property of adjacent owners, and compensation for damages.

4. SAME—BIG RAPIDS CHARTER—ADOPTION OF STATUTORY PROVISIONS.

*Held*, that by adopting chapter 40 of the charter (chapter 25 of Act No. 215, Pub. Acts 1895) such proceeding was adopted as is provided in said act, requiring the determination by a jury of the necessity for said improvement as well as the compensation therefor.

5. SAME—"TAKING," WHAT CONSTITUTES.

There may be a "taking" of property without actual physical invasion, including cases where the value is destroyed, or serious injury is inflicted to the property itself, or the owner is excluded from its enjoyment, or from any of its appurtenances.

6. SAME—CONSTRUCTION OF CHARTER—DAMAGES—COMPENSATION.

That chapter 40 of said charter provides for compensation, while chapter 36, § 7, provides for damages, *held*, unimportant, since in both provisions the basic thought is compensation for the taking of property.

7. SAME—CONFLICT OF LAWS—LEGISLATIVE QUESTION.

That by the construction herein given to said charter another provision wherein reference is made to chapter 40

will be rendered inoperative, if true, *held*, to be a legislative rather than a judicial question.

8. SAME—VOID PROCEEDINGS—MISCARRIAGE OF JUSTICE.
   Where the whole proceeding is regarded by this court as a nullity, because the statutory proceeding was not followed, the case will not be disposed of under 3 Comp. Laws 1915, § 13763, providing that no judgment shall be set aside, etc., unless a miscarriage of justice has resulted, although the jury found that defendants were entitled to no damages.

Error to Mecosta; Mayne (Frederick W.), J., presiding. Submitted January 16, 1920. (Docket No. 76.) Decided April 10, 1920.

Proceedings by the city of Big Rapids against the Big Rapids Furniture Manufacturing Company and others to determine the damages resulting from a change of grade in a public street. From the judgment rendered, defendants appealed to the circuit court. Judgment for plaintiff. Defendants bring error. Reversed, and proceedings quashed.

*Broomfield & Worcester*, for appellants.

*Arthur J. Butler* (*Charles E. Ward*, of counsel), for appellee.

CLARK, J. How may the plaintiff under its charter change the grade of one of its streets where defendants, owners of adjacent property, have made improvements in conformity to the established grade? This is the main question in the case. In 1915 the electors of the city of Big Rapids adopted a charter under the so-called "home-rule act," Act No. 279, of the Public Acts of 1909, as amended, being sections 3304 to 3341, 1 Comp. Laws 1915. By the charter the corporate powers of the city are vested in a city commission designated as the "commission," consist-

ing of a mayor and two commissioners. Sections 5 and 7 of chapter 36 of the charter read as follows:

"SEC. 5. The commission shall have authority to determine and establish the grades of all streets, avenues, alleys and public grounds within the city, and to require improvements and buildings adjacent to or abutting upon such streets, alleys or grounds to be made and constructed in conformity with such grade and upon such lines as shall be prescribed by the commission and the commission may change or alter the grade of any street, alley or public ground, or of any part thereof, whenever in their opinion the public convenience will be promoted thereby. Whenever a grade shall be established or altered, a record and diagram thereof shall be made in the book of street records in the office of the city clerk."

"SEC. 7. Whenever the grade of any street or sidewalk shall have been heretofore, or shall hereafter, be established, and improvements shall thereafter be made by the owner or occupant of the adjacent property in conformity to such grade, such grade shall not be changed without compensation to the owner for all damages to such property resulting therefrom, to be ascertained by a jury as provided in this charter or said damages may be ascertained and agreed upon by and between the city and the owner or occupant of such premises. Whenever such damage shall be ascertained or agreed upon as heretofore provided, such damages, or such part thereof as the commission shall deem equitable and just, shall be paid by the city, or the commission may cause such damages, or such part thereof as may be just and proper, to be assessed upon such real estate as may be benefited by reason of the change of such grade, and whenever the commission shall determine to assess such damages, or any part thereof, upon the property benefited, it shall determine and define a district in said city, which in its judgment is benefited by the improvement out of which said damages arise, and shall cause the same to be assessed upon such district, which said assessment shall be upon the owners or occupants of the taxable real estate in said district, in proportion as nearly as

may be in the advantage or benefit each lot, parcel or subdivision is deemed to acquire by the improvement out of which such damages arise, but the property on account of which such damages were awarded shall not be included in said district. The assessment shall be made, and the amount levied and collected in the same manner as other assessments on a district deemed to be benefited in the grading and improvement of streets, as provided for in this charter, relative to special assessments and the collection thereof, shall apply thereto. Such damages, when collected as aforesaid, and when determined upon by the city, shall be paid to the person entitled thereto."

These sections are taken almost word for word from the general' statutes of the State, being sections 5 and 7 of chapter 22 of Act No. 215 of the Public Acts of 1895, being sections 3091 and 3093, 1 Comp. Laws 1915. Section 7 of chapter 36 of the charter, which we have quoted, in speaking of compensation for damages, says that the same is: "to be ascertained by a jury as provided in this charter," while section 7 of chapter 22 of Act No. 215 of the Public Acts of 1895, above mentioned, in speaking of compensation for damages, says that the same is: "to be ascertained by a jury as provided in chapter 25 of this act." Except for changes in words made necessary by the commission form of government, chapter 40 of the city charter is identical in language and provisions with chapter 25 of the general law above mentioned. Chapter 40 of the charter provides the only charter method for having a jury ascertain compensation for the damages under section 7 of chapter 36 of the charter. Section 1 of chapter 40 of the charter is as follows:

"SEC. 1. Private property may be appropriated for public use in the city for the purpose of opening, widening, altering or extending streets, alleys and avenues; for the construction of bridges, for public buildings and for other public structures, for public grounds, parks, market places and spaces and for the improvement of water courses; for sewers, drains and

ditches; for public hospitals, pest houses, quarantine grounds and public cemeteries, and for other lawful and necessary public uses."

Section 2 provides that private property may be appropriated for the public use either in the manner provided by the general condemnation law of the State (sections 3376 to 3399, 1 Comp. Laws 1915) or under the charter provisions (sections 3136 to 3164, 1 Comp. Laws 1915).

Section 3 provides in substance that when the commission shall have declared that they deem it necessary to take private property for a designated public improvement they shall direct the city attorney by resolution to institute the necessary proceedings in probate court.

Section 4 required the city clerk to deliver a copy of the resolution to the city attorney who is required then to file a verified petition in probate court. The section further provides:

"The petition shall state, among other things, that it is made and filed as commencement of judicial proceedings by the municipality in pursuance of this act to acquire the right to take private property for the use or benefit of the public, without consent of the owners, for a public improvement, designating it, for a just compensation to be made. A description of the property to be taken shall be given, and generally the nature and extent of the use thereof that will be required in making and maintaining the improvement shall be stated, and also the names of the owners and others interested in the property, so far as can be ascertained, including those in possession of the premises. The petition shall also state that the commission has declared such public improvement to be necessary and that they deem it necessary to take private property described in that behalf for such improvement for the use or benefit of the public. The petition shall ask that a jury be summoned and impaneled to ascertain and determine whether it is necessary to make such public improvement, whether it is necessary to

take such private property as it is proposed to take for the use or benefit of the public and to ascertain and determine the just compensation to be made therefor. The petition may state any other pertinent matter or things, and may pray for any other or further relief to which the municipality may be entitled, within the objects of this chapter."

Section 5 provides for issuing a summons. Section 6 provides for service of the summons. Section 7 provides for the selecting and impaneling of a jury. Section 8 provides:

"The jurors so impaneled shall be sworn or shall affirm in substance as follows: 'You do solemnly swear (or affirm) that you will well and truly ascertain and determine whether there is a public necessity for making the proposed improvement and for taking for the use or benefit of the public the private property which the petition describes and prays may be taken, and if you shall determine that it is necessary to make such improvement, and to take said property, that then you ascertain, determine and award the just compensation to be made therefor, and faithfully and impartially discharge all other duties as devolve upon you in this case, and unless discharged by the court, a true verdict give, according to the law and evidence, so help you God (or under the pains and penalties of perjury). The jury shall hear the proofs and allegations of the parties, and shall go to the place of the intended improvement, in the charge of an officer, and upon or as near as practicable to the property proposed to be taken, and examine the premises. They shall be instructed as to their duties and the law of the case by the probate judge, and shall return under the charge of an officer and render their verdict in the same manner as on the trial of an ordinary civil case, but the same shall be in writing and be signed by all jurors."

Section 9 provides:

"The jury shall determine in their verdict the necessity for the proposed improvement and for taking such private property for the use or benefit of the

public for the proposed improvement, and in case they find such necessity exists, they shall separately award to the owners for such property and others interested therein such compensation therefor as they shall deem just. If any such private property shall be subject to a mortgage, lease, agreement or other lien, estate or interest, they shall apportion and award to the parties in interest such portion of the compensation as they shall deem just."

Section 10 provides as to the consideration by the jury of their verdict and suggests a form of verdict in two parts ·

"We find that it is——necessary to take the private property described in the petition in this cause, for the use and benefit of the public for the proposed public improvement," and

"The just compensation to be paid for such private property we have ascertained and determined, and hereby award as follows:"

Section 11 provides as to amendments. Section 12 provides for the entry and confirmation of the judgment. Section 13 relates to procedure in case of disagreement of the jury. Section 14 relates to the death or disability of a juror. Section 15 gives the right to appeal to circuit court. Section 16 provides for making a return on appeal. Section 17 provides:

"Upon filing the return to the probate court, as mentioned in the preceding section, the circuit court shall have jurisdiction of the case. The parties may proceed to trial by jury without reference to any term of court upon the question as to the amount of damages to be awarded; but the finding of the jury before the probate court as to the necessity of taking the land shall be held to be conclusive. The appeal of one or more persons interested in any judgment of confirmation shall not in any way affect said judgment as to other persons interested therein who do not appeal."

Remaining sections of chapter 40 of the charter relate to proceedings in circuit court upon appeal. The

common council of the city of Big Rapids established
the grade of Pere Marquette street of the city in 1888.
In May, 1917, a resolution was adopted by the city
commission to the effect that in the opinion of the
commission public convenience will be promoted by a
change or alteration of grade of Pere Marquette street
of the city. The resolution gave detailed specifica-
tions as to changes and adopted a profile and diagram
respecting the change of grade. The resolution also
recited that it appeared to the commission that the
owners or occupants of property adjacent to Pere Mar-
quette street may or do claim damages to the adjacent
property by reason of the change of grade of the
street. The resolution described the adjacent prop-
erty and named the owners or occupants thereof who
are defendants herein. The resolution directed the
city attorney to institute proceedings in the probate
court of Mecosta county or in another court pursuant
to the charter provisions of the city to ascertain and
fix the damage, if any, suffered by the owners or occu-
pants of such adjacent property by reason of the
change of grade of the street. Prior to the resolution
plaintiff had attempted to change the physical grade
of Pere Marquette street without a proceeding in
court and at the instance of the Big Rapids Furniture
Company had been enjoined by decree of the circuit
court from making such change until it had carried to
final determination a proceeding under chapter 40 of
the charter. A part of the improvement attempted
and desired in the street was the raising of a deck of
a bridge and the building of approaches thereto. Pur-
suant to the resolution the city attorney on May 10,
1917, filed for the city in the probate court of Mecosta
county a petition asking to have a jury impaneled to
*determine the damages.* The petition recited that it
was filed pursuant to chapter 40 and chapters relevant
thereto of the charter of the city. The defendants

were made parties on the ground that they were
owners or occupants of property adjacent to the street
and had claimed to have made certain improvements
in conformity with the established grade of the street,
being the grade established in 1888. The defendants
moved to dismiss and quash the petition for reasons
which we will discuss later. The motion was granted
by Hon. Fred S. Lamb, circuit judge, sitting as the
probate judge of Mecosta county. Thereupon the city
removed said proceedings by certiorari to the circuit
court where Hon. Peter F. Dodds, circuit judge, in
November, 1917, reversed the decision of Judge Lamb
and remanded the case to probate court. The defend-
ants filed exceptions at length which repeated substan-
tially the ground of the motion to dismiss and the de-
fendants filed similar objections to further proceed-
ings in probate court. The case was heard by a jury,
Hon. John Vanderwerp, circuit judge, sitting as pro-
bate judge. Over defendants' objections the only
question submitted to the jury was the determination
of the damages of the defendants as the owners or oc-
cupants of property adjacent to the street by reason
of the change of grade. The verdict of the jury was
that the defendants, Big Rapids Furniture Manufac-
turing Company, Hanchett Swage Works and Big Rap-
ids Water Power Company, had made no improve-
ments in conformity with the grade and that the de-
fendant Grand Rapids & Indiana Railway Company
had made such improvements and assessed its dam-
ages at $95. The Big Rapids Furniture Manufactur-
ing Company and the Hanchett Swage Works appealed
to circuit court. The other defendants did not appeal.
Defendants in circuit court moved to quash the peti-
tion and to vacate and set aside the verdict of the
jury in probate court, which was denied. The case
came on for trial by jury in circuit court. The verdict
of the jury was that the defendants Big Rapids Fur-

niture Manufacturing Company and Hanchett Swage Works had made no improvements in conformity with the established grade of the street, and awarded them no damages, upon which verdict judgment was duly entered. Throughout these proceedings by numerous objections, motions and exceptions the defendants have saved their questions which they here raise by many assignments of error. The plaintiff claims that its commission, under section 5 of chapter 36 of the charter above quoted, may change or alter the grade of any street, including a street for which a grade had theretofore been established and in conformity to which grade adjacent property owners had made improvements, whenever, in the opinion of the commission, public convenience will be promoted by such change, and that under section 7 of chapter 36 of the charter, above quoted, it is necessary to submit to a jury the sole question of determining the compensation to the owners for all damages to such property resulting from such change of grade, and that in the proceeding to have such compensation for the damages ascertained plaintiff may use such sections and parts of sections of chapter 40 of the charter as are applicable to its purpose. The defendants by several assignments of error contend that the commission may change or alter the grade of any street whenever in their opinion public convenience will be promoted thereby except in cases where improvements have been made by the owners or occupants of adjacent property in conformity to the established grade, and in those cases the city must follow all of the provisions of chapter 40 of the charter and submit to the jury, not only the question of compensation for the damages, but the question of necessity as well; that the city in such proceeding may not "segregate and amputate the rights and procedure as defined in chapter 40 and submit to the jury only the question of damages";

that by the reference to chapter 40 contained in section 7 of chapter 36 of the charter the entire of the provisions of chapter 40 is adopted; that the filing of the petition in probate court is an admission by the plaintiff city that defendants had made improvements in conformity to the established grade of the street, otherwise there would be no need of any proceeding in probate court; that the finding of the jury that the defendant had made no improvements in conformity to grade is not judicial or binding because the defendants had a right to a determination by the jury upon the question of the necessity of the improvement, of the necessity of taking their particular property and of compensation for damage, and that this, being a statutory proceeding, the petition must show upon its face all that is necessary to bring the case within the statute to confer jurisdiction. The petition of the plaintiff filed in probate court does not comply with the provisions of chapter 40 of the charter in the following particulars:

(*a*) It does not state that it was filed as commencement of judicial proceedings to take private property for the use and benefit of the public without consent of the owners for a public improvement designating it for a just compensation to be made.

(*b*) It does not contain a description of the property to be taken and generally the nature and extent of the use thereof that will be required.

(*c*) It does not state that the commission had declared such public improvement to be necessary and that they deem it necessary to take private property in that behalf for the use and benefit of the public.

(*d*) It does not ask that a jury be summoned and impaneled to determine whether it is necessary to make such public improvement and to take such private property.

Defendants also point out that the oath to the jury required by section 8 of chapter 40 could not be taken and was not taken under the petition filed in the case

and that the jury could not and did not make the determination in their verdict required by sections 9 and 10 of chapter 40 above quoted for the reason that in all three of these sections reference is made to the necessity for the proposed improvement and for the taking of private property for the use and benefit of the public.

Section 36 of the "home-rule act" above mentioned provides that no provision of any city charter shall conflict with or contravene the provisions of any general law of the State. With the exception of unimportant changes in certain words made necessary by their adoption into the charter we have seen that sections 5 and 7 of chapter 36 of the charter are sections 5 and 7 of chapter 22, Act No. 215, Public Acts of 1895, and that chapter 40 of the charter is chapter 25 of said general law. Section 7 of chapter 22 of said general law by the use of the words: "to be ascertained by a jury as provided in chapter 25 of this act" adopts by reference chapter 25 of the general law. As chapter 40 of the charter provides the only charter method of ascertaining compensation for the damages mentioned in section 7 of chapter 36 of the charter, and as chapters 36 and 40 of the charter are taken verbatim, except as noted, from the general law, and because of the statute itself, we must hold that by the use of the words in section 7 of chapter 36 of the charter: "to be ascertained by a jury as provided in this charter," chapter 40 of the charter is adopted by reference. Such adoption is entire. We quote from *Deake* v. *Livingston Probate Judge*, 206 Mich. 301, where Justice OSTRANDER, speaking for the court, said:

"The proceeding concerns a drain proposed to be laid out in the counties of Livingston, Ingham, and Washtenaw, involving the action of the county drain commissioners of each of said counties. Governing statute provisions are found in 1 Comp. Laws 1915,

§ 4932 *et seq.*, as amended by Act No. 270, Pub. Acts 1917. Not all of the owners of land traversed by the drain released the necessary right of way and the damages to result from constructing the drain. Upon an application made to the probate court for Livingston county, a jury was ordered to determine the necessity for taking and the damages resulting from taking lands not released. It was objected that the landowners could not rightfully demand a jury and that the power of the court was limited to the appointment of special commissioners. Whether the objection is good is the question presented, to be answered as the statute shall be interpreted.

"An examination will disclose that the general statute, chapter No. 93, is subdivided into chapters, of which portions of subchapters III and VII are to be considered. In subchapter VII, entitled 'Drains Traversing more than one County,' a jury is not mentioned, unless, as it is claimed, by reference to subchapter III. If it is mentioned by reference, it is in the words, found at the end of section 3 (1 Comp. Laws 1915, § 4934) :

"'All proceedings had in the appointment of special commissioners, under the provisions of this chapter, shall be similar to those provided in chapter three for the appointment of other special commissioners.'

"Section 7, chapter III (1 Comp. Laws 1915, § 4886), provides for the appointment of special commissioners. There are four provisos following the enacting part of the section, one of which is:

"'*Provided, further,* That any person whose premises are traversed by the proposed drain may in writing demand and have from such court at the time of hearing of said application a jury of twelve freeholders of said county * * * to ascertain and determine the necessity for taking or using such lands, and to appraise and determine the damages and compensation to be allowed therefor.'"

And it was held that:

"'All proceedings had in the appointment of special commissioners, under the provisions of this chapter, shall be similar to those provided in chapter three for the appointment of other special commissioners.'

—means that the entire of the provisions of chapter three, relating to the appointment of special commissioners, including the said proviso, is adopted in chapter seven by reference, and that 'proceedings' was meant to include the provision found in the proviso above set out."

As to the right of plaintiff to design this proceeding, including the petition therein, to suit its convenience and purpose from sections and parts of sections of chapter 40 of the charter, we think what was said in *Clay* v. *Improvement Co.*, 34 Mich. 204, is controlling. An act of 1869 authorized the formation of corporations for the purpose of improving the navigation of rivers, and provided that property might be taken for the purpose by instituting certain proceedings in court to determine necessity and damage, but did not provide for the appointment of commissioners or point out their duties except by reference to sections 13 to 25, inclusive, of the act to provide for the formation of companies to construct plank roads. A petition was filed in court praying the appointment of commissioners to determine whether it was necessary to take certain lands owned by Clay and to determine the damages. It was held that the petition was defective in omitting material averments and that there was a fatal defect in the act as to the attempted adoption of the sections by reference, and this court said:

"While we do not question the right or power of the legislature to thus refer to the provisions of another statute, and render them applicable and binding as though incorporated and re-enacted in the act under consideration, yet such a method of incorporating certain sections of previous statutes in subsequent acts, must be confined to cases where the sections so referred to are germane to the latter act; where it will not be necessary that parties should either omit from or add important words or provisions to the sections referred

to in order to render them applicable. When such changes become necessary, it is leaving to each party acting under the statute the power to change it to suit his convenience, and thus to legislate for himself. And when he has done so there is no certainty at all that the legislature had its attention been specially called thereto, would have made like changes, or if it had, that the act would have become a law by receiving the approval of the governor. * * *

"The sections referred to must be treated as though they had been re-enacted at length in this act, and without any changes having been made therein."

The proceeding to be taken in cases of this character is statutory. Plaintiff did not have the right to legislate for itself and design from parts of the sections of chapter 40 the proceeding attempted here. The legislature might have provided such a proceeding, but whether the one here attempted would have had its approval, had it been called to its attention, we cannot say. If the city may proceed under section 7 of chapter 36 of the charter the proceeding must follow the provisions of chapter 40 of the charter which as we have seen gives the right to proceed under the general condemnation laws of the State (sections 3376-3399, 1 Comp. Laws 1915) as well as under the charter provisions (sections 3136-3164, 1 Comp. Laws 1915). The petition should show on its face all that is necessary to bring the case within the statute to confer jurisdiction. *Clay* v. *Improvement Co., supra; Hoyt* v. *City of East Saginaw,* 19 Mich. 39 (cited in *Bay City Traction, etc., Co.* v. *Bay City,* 155 Mich. 393; *Crawford* v. *City of Detroit,* 169 Mich. 293).

"A rule often stated is that a remedial statute should be construed liberally for the advancement of the remedy; but neither this rule nor the one of strict construction is a warrant for disregarding the language of a statute, or for amending the law to conform to a judicial conception of what should have

been the legislative conception in passing it." *City of Detroit* v. *Railway*, 156 Mich. 111.

We think it is unquestioned that the legislative power of the State may regulate by statute the changing of the grade of a street and provide that when adjacent property owners have made improvements in conformity to the established grade such grade shall not be changed until in the proceeding provided a jury shall have determined the necessity for the improvement, the necessity for taking by change of grade property of adjacent owners and compensation for damages (*Loomis* v. *Hartz*, 165 Mich. 662), and we think that by adopting said chapter 25 of the general law (chapter 40 of the charter) by reference in said section 7, chapter 22 of the general law (section 7, chapter 36 of the charter) such a proceeding was provided. That there may be a taking of property without actual physical invasion of it has often been held. In *Allen* v. *City of Detroit*, 167 Mich. 473 (36 L. R. A. [N. S.] 890), Justice STEERE, speaking for the court, said:

"Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor. * * * The contention that the city, under its general police power, may ignore this building restriction, and erect its fire engine house within the restricted district, because it is necessary for the public good and to protect the lives and property of citizens in that locality, is not tenable. When such action deprives the individual of a vested right in property, it goes beyond regulation under police power and becomes an act of eminent domain governed by the appropriate condemnation laws."

See, also, *Schneider* v. *City of Detroit*, 72 Mich. 240 (2 L. R. A. 54).

In *Ranson* v. *City of Sault Ste. Marie*, 143 Mich.

661 (15 L. R. A. [N. S.] 49), the city without physical invasion of plaintiff's property built a bridge in the street and constructed approaches thereto, seriously interfering with plaintiff's access to the street from the adjacent property and it was said by this court:

"Plaintiff's damage flows from the construction of an embankment by the city which has the effect to destroy, to some extent, her property. Within repeated decisions of this court, there has been a 'taking' of plaintiff's property, and, if we could consider the purpose of the taking a 'public purpose,' plaintiff was entitled, by the terms of defendant's charter, to compensation. The city has taken, without proceedings to determine either necessity or resulting damage.

"The term 'taking' should not be used in an unreasonable or narrow sense. It should not be limited to the absolute conversion of property, and applied to land only, but should include cases where the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or the owner is excluded from its enjoyment, or from any of its appurtenances." *Pearsall* v. *Board of Sup'rs of Eaton Co.*, 74 Mich. 558 (4 L. R. A. 143); (quoting from the syllabus).

It is argued that chapter 40 provides for compensation while section 7, chapter 36, provides for damages, and that therefore chapter 40 in the entire is not appropriate to the municipal purpose. Section 7, chapter 36, provides for compensation for damages. In both provisions a basic thought is compensation for the taking of property. It is also urged that by this holding another charter provision wherein reference is made to chapter 40 will be inoperative. We regret that, if true, but our duties are judicial and not legislative. We think that chapter 40 of the charter in its entirety provides an appropriate proceeding to accomplish the municipal purpose in this case.

It is with reluctance that we decline the suggestion

of counsel for plaintiff to dispose of this case under section 28, chapter 50, of the judicature act (3 Comp. Laws 1915, § 13763), on the ground that the jury in both courts having found that defendants made no improvements in conformity to the street grade and were entitled to no damages it does not affirmatively appear in the record that the errors complained of were prejudicial to them, but as we must regard this whole proceeding as a nullity the verdicts are not persuasive. It is unnecessary to discuss remaining questions raised.

The judgment is reversed and the proceedings are quashed. No costs will be awarded.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.