CITY OF MILWAUKEE, Appellant, vs. DILLER, Respondent.

*November 11—December 6, 1927.*

*Statutes: Portion of legislative act declared invalid: Milwaukee charter provisions relating to jury trials in condemnation: Incorporating other sections of statutes to replace invalid portions.*

1. Where a portion of an act of the legislature is held invalid by the courts, the remainder may stand unless the invalid portion was an inducement to the legislature for passing the act as an entirety.   p. 379.
2. Since at the time the Milwaukee city charter was enacted, ch. 32, Stats., as to condemnation of property, did not exist, the legislature, in enacting the charter, and in particular ch. VI thereof, did not contemplate that if the jury provision relating to the necessity for the taking of property in condemnation proceedings should be held unconstitutional the invalid portion of the charter could be supplied by reference to sub. (1),

sec. 32.07, Stats., which provided for the impaneling of a jury .on the question of the necessity of the taking.   p. 380.

3. The Milwaukee charter having been revised by ch. 56 of the Laws of 1852, it could not have been within the contemplation of the legislature in passing the charter that if the part thereof relating to a jury trial of the necessity of 'the taking in condemnation proceedings should be held invalid it could be supplied by the general Code, which was not adopted until 1856.   p. 380.

4. The provision of the charter requiring a trial by a jury of the question of the necessity for the taking is not so separable from the balance of the condemnation proceeding, as provided by the charter, as to leave a workable plan after the provision referring to a jury trial of the necessity for the taking was declared unconstitutional.   p. 381.

5. Part of ch. VI of the city charter, relating to a jury trial of the necessity for taking of property in condemnation proceedings, having been declared unconstitutional, the city could not incorporate sub. (1), sec. 32.07, Stats., in place of the invalidated portion thereof, since ch. 32, Stats., is a complete scheme for acquiring property under eminent domain and requires an attempt first to acquire the property by agreement.   p. 385.

APPEAL from an order of the circuit court for Milwaukee county: CHESTER A. FOWLER, Judge.   *Affirmed.*

This is an appeal from an order sustaining the objection of the respondent to the impaneling of a jury to determine the question of necessity in a condemnation proceeding, and dismissing the petition.

The appeal involves the question of whether the condemnation procedure provided by ch. VI of the Milwaukee city charter, together with sub. (1), sec. 32.07, Stats., is available to the city, or whether it must exercise its power of eminent domain in the manner provided by ch. 32, Stats.

The first five sections of ch. VI of the Milwaukee city charter, here involved, will be found printed in the margin of the opinion in *State ex rel. Allis v. Wiesner,* 187 Wis. 384, 204 N. W. 589.

In sec. 32.01, Stats., "person" is defined to include a city. Sec. 32.02 provides that a city may condemn property which they "have power to acquire and hold, for the purposes speci-

fied, in case such property cannot be acquired by gift or purchase at an agreed price." Sec. 32.04, Stats., provides:

"Any person desiring to acquire any property by condemnation shall present a verified petition therefor to the county or circuit judge of the county where such property is situated. Such petition shall contain a description of the property desired to be condemned; the purpose for which it is intended to be used; the names of the parties who own or occupy it or have any interest therein, as near as may be, and if any such persons are infants, their ages as near as may be, and if any are persons of unsound mind or unknown, these facts shall be stated."

Sec. 32.05 provides for the filing of the petition and for giving notice thereof. Sub. (1), sec. 32.07, is as follows:

"If the application be by a municipal corporation, the filing of the petition under section 32.04 shall be deemed the commencement of an action for the determination of the necessity of the taking. Within twenty days after the service of notice, as provided in section 32.05, any person owning or interested in any property proposed to be condemned, may serve and file an answer. After the expiration of the time for answering the action may be brought on for hearing on a three days' notice to all parties who have answered and shall have precedence over all other matters not on trial. The court shall thereupon impanel a jury under section 255.10, and the question of the necessity of the taking shall thereupon be tried as a question of fact. If no answer to the petition is interposed the trial by jury shall proceed *ex parte*. Costs in such proceedings shall be paid by the municipality. The court may, in its discretion, submit to a single jury the determination of such necessity as to one or more than one or all of the parcels of land sought to be taken for the same purpose. If the jury find that the taking of such lands is not necessary the owner thereof shall recover from the municipality his necessary disbursements and taxable costs not to exceed twenty-five dollars."

For the appellant there was a brief signed by *John M. Niven,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams* and *Mr. Mark A. Kline,* first assistant city attorney.

For the respondent there was a brief by *Maurice A. Mc-Cabe, George Katz,* and *Walter H. Bender,* all of Milwaukee, and oral argument by *Mr. Bender.*

CROWNHART, J.   In *State ex rel. Allis v. Wiesner,* 187 Wis. 384, 204 N. W. 589, this court held the jury provision of ch. VI of the Milwaukee city charter, with reference to the necessity of taking property by condemnation, was unconstitutional.   The appellant now seeks to determine the necessity for the taking of property under the procedure of sub. (1), sec. 32.07, Stats., and then to acquire the property by virtue of the city charter provisions, following the unconstitutional provisions of the charter.

The questions involved may be simply stated.   Did the decision of this court in the *Wiesner Case, supra,* have the effect of invalidating the whole of ch. VI of the Milwaukee charter, covering the subject of eminent domain?   Or, are the provisions of that chapter, with reference to the determination of necessity, which were held invalid, and the part of the chapter which relates to the acquisition of property after the necessity therefor has been ascertained, separable so that we may now say that the legislature, in passing ch. VI of the Milwaukee charter, would have passed the act if it had known that the provisions with reference to determining the necessity for the taking were invalid?

The courts uniformly hold that where a portion of an act is held invalid, the rest of the act may stand unless the invalid portion was an inducement to the legislature for passing the act as an entirety.

Looking at the original charter of the city of *Milwaukee* and the amendments thereto, it will be seen that ch. VI thereof constitutes a complete scheme for the taking of property under eminent domain.   It provides for the determination of the necessity for taking the property, but the provisions of the charter in that regard were held unconstitutional for the reason that the jury provided by the charter was not the

jury contemplated by the constitution.   At the time the
Milwaukee charter was enacted, ch. 32, Stats., did not exist,
so the legislature could not have had in contemplation that if
the jury provisions relating to the necessity for taking the
property should be held unconstitutional, the invalidated por-
tion of the charter could be supplied by reference to ch. 32,
Stats.   However, counsel for appellant contends that the
general Code provisions then in effect provided for civil
actions wherein jury verdicts might be had, and it is his con-
tention that the legislature may well have had the Code in
mind and thus have enacted ch. VI of the charter, relying
upon the provisions of the Code to supply the jury determina-
tion of the necessity in case the provisions of ch. VI with
reference thereto should be held invalid.   We think this
position is untenable.   The provisions of the Code relate to
civil actions, and manifestly were intended to apply to the
ordinary actions in court.   But the Milwaukee charter was
consolidated and revised by ch. 56, Laws of 1852, while the
Code was not adopted until 1856.   So the legislature could
not have had the Code in mind at that time.   As consolidated
and revised in 1852, the charter had substantially the jury
provision as later amended.   The legislature would probably
not have enacted the law in the form it did if it had under-
stood that it was invalid, but would have substituted in
ch. VI, for the invalidated sections, some other scheme which
in its judgment would have been valid, as it did in the charter
of the city of Madison, ch. 36, Laws of 1882.

In the several city charters which we have examined the
legislature included a jury provision for determining neces-
sity as a part of the plan of obtaining private property under
eminent domain, and nowhere have we found any charter
provision not including it.   When, in 1889, the commission,
headed by the late Mr. Justice MARSHALL, appointed by this
court to draft a general charter law, reported its draft of
the law, it included such a provision in legal form as a part

of the general scheme, which was adopted by the legislature. See history of the general charter law, dissenting opinion by Mr. Chief Justice CASSODAY, in *Adams v. Beloit,* 105 Wis. 363, 376 *et seq.,* 81 N. W. 869.   So it would seem that from the organization of the state down to the present, the legislature has considered the jury verdict of necessity a necessary part of any plan for condemnation of private property for city purposes.

We think the provisions of the charter with reference to the verdict of necessity, and the balance of the condemnation proceedings, are not separable so as to leave a workable plan, since the decision in the *Wiesner Case, supra.*

The appellant, however, did not seek to determine the necessity in this proceeding, under the Code as it existed at the time the charter was enacted or since it was amended.

Ch. 32 of the Statutes is a recent enactment, making a complete, workable scheme for acquiring property under eminent domain in every city of this state.   It is available to the city of *Milwaukee* under sub. (1), sec. 32.02, and sub. (1), sec. 32.03, Stats.

But can it be said that the legislature contemplated that the city of *Milwaukee* could reach over into ch. 32, Stats., and take the provision relating to necessity for taking property, and in effect incorporate it into its city charter in place of invalidated portions thereof?   The rule is stated in 20 Corp. Jur. 881:

"If there are several distinct statutes under which a corporation may condemn lands, proceedings commenced under any one must be conducted throughout under that statute; they cannot be supported or aided by a resort to any other."

Ch. 32 is made available to the city of *Milwaukee* by sub. (1), sec. 32.02, as modified by sub. (1), sec. 32.03, which in part reads:

"This chapter does not apply . . . to any city of the first class [*Milwaukee*], except that every such city may conduct

any condemnation proceedings either under this chapter or, at its option, under other laws applicable to such city."

In other words, *Milwaukee* had the option to proceed under ch. 32 or under its special charter, but no option is given to it to create a different scheme from either by selecting part of one scheme and part of the other and thus create a plan of its own. Such a proceeding is condemned by the decisions of this state. *State ex rel. Manitowoc L. & F. Co. v. Kelley,* 167 Wis. 91, 97, 166 N. W. 782. Also, see *Mt. Clemens v. Macomb Circuit Judge,* 119 Mich. 293, 77 N. W. 936; *Big Rapids v. Big Rapids F. M. Co.* 210 Mich. 158, 177 N. W. 284.

The general charter law provided a similar option to cities under special charters, and under such option the city could proceed under its charter throughout, or it could proceed by adopting the general charter provisions of the subject, but it was not permitted to interweave the one with the other into a hybrid plan to suit its fancy. Under the plan here attempted, the city sought to escape some of the provisions of ch. 32 and select from its charter portions more favorable to the city. Manifestly, such a scheme has all the vices condemned in *State ex rel. Boycott v. Mayor, etc.* 107 Wis. 654, 659, 84 N. W. 242, where it is said:

"The principle that an option law, in order to be valid, must be a complete law in all its terms and provisions, when it leaves the legislative branch of the government, so that nothing is left open, save the determination of the prescribed fact upon the happening of which it is to go into effect, is so well settled as to require no discussion. It must be a complete law in all its details *in praesenti,* but may be left to take effect *in futuro. Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738. Any other rule would result in a practical delegation of legislative power. If the governing body of a municipal corporation can take such parts as it chooses from a complete law, and reject such parts as it chooses, the result will be, not the law which the legislature has enacted, but a law which the corporation has enacted. In such a case

the legislature has never said that the parts chosen by the corporation should constitute a law, standing by themselves, but the governing body of the corporation has said so. This must be legislation, or it is nothing; and, if it be legislation, it is legislation by the municipal corporation, and not by the legislature."

The principle is further illustrated in *State ex rel. Manitowoc L. & F. Co. v. Kelley, supra,* where it is said:

"It seems plain that the legislative idea was that cities of the second and third class might proceed under the general statutes or under the charter method. The power is given to pursue the procedure prescribed by statute, 'as well as the powers and privileges conferred by the provisions of their respective charters.' In the instant case the proceeding was taken under the method provided by the general statutes, notices given, hearing had, and vote taken. Obviously the mayor concluded, after the vote had been taken, that the result should be determined not by the statute under which the proceeding was carried on up to that point, but by charter provisions. This conclusion resulted in pursuing one method until after the vote had been taken and then switching to the other method. This the board had no right to do. When the method under the general statutes was adopted that method should have been pursued throughout the whole proceeding. The board had no power to proceed in part under the statutes and in part under the charter. The statutes on the subject do not provide what vote of the aldermen is required, hence a majority vote was sufficient to adopt the resolution."

Under ch. 32, Stats., the scheme is materially different than under the Milwaukee city charter. Under sec. 32.02 there must first be an attempt to acquire the property by gift or purchase at an agreed price. Under the city charter there is no such requirement. This provision of ch. 32 has been generally held by the courts to be a very material provision and valuable to the property owners.

"But in most jurisdictions by express provision, either in the constitution or by statute, and in some cases by both, proceedings to condemn property cannot be instituted unless

such an attempt has been made. Such a provision is mandatory and not merely directory, and the condemnation proceedings are absolutely void in case no attempt is made before beginning them to come to an agreement with the owner. . . . The attempt and failure to agree must be alleged and proved, and this must appear on the face of the record." 20 Corp. Jur. 893, 894.

"Where, as in most of the states, the statutes withhold compulsory condemnation until after an ineffectual attempt to agree with the owner as to the price of the land, the petition must allege the inability of the parties to agree, or a reason must be given for not making the attempt, as that the owner is legally incapable of contracting, or is absent, or unknown." 20 Corp. Jur. 951, 952.

"Statutes conferring the power of eminent domain usually require that an attempt shall be made to agree with the owner of property desired, before instituting proceedings to condemn it. In whatever form of words this direction is couched, it is generally held to be imperative, and a condition precedent to the exercise of compulsory powers. It is generally held that the inability to agree should be alleged and proven." 2 Lewis, Eminent Domain (3d ed.) p. 893.

"There is a reluctance on the part of the courts to the exercise of eminent domain, when the same end may be accomplished by agreement of the parties. The remedy is harsh in its nature, liable to gross perversion, and one which, in practice as in theory, encroaches upon the rights of the individual. In this country, as in England, it has always been the object of suspicion and distrust. When, therefore, the action of the government in taking private property can be attributed to a contract, instead of an exercise of eminent domain, it will be so treated. The legislatures generally show the same spirit in requiring an agreement to be made with the owner, if possible, and that condemnation shall not be resorted to if an agreement can be made. . . .

"The record of the preliminary proceedings should affirmatively show a failure to agree. The refusal of the owner is a jurisdictional fact, and is not to be eked out by extraneous evidence. The allegation in the record makes a *prima facie* case. There should properly be an allegation of the attempt to agree in the petition or complaint." Mills, Eminent Domain (2d ed.) pp. 258, 259.

There is nothing in ch. 32 which indicates that the legislature had in mind that the city of *Milwaukee* might avail itself of some portions of that chapter, which would be favorable to the city, and then go back to the city charter for other proceedings more favorable to it than ch. 32.

*By the Court.*——The order of the circuit court is affirmed.