CHARLES M. HILL, SR., Secretary, Department of Local Affairs Development
In your letter dated March 8, 1972, you asked two questions concerning ch. 409, Laws of 1969, as amended by ch. 103, Laws of 1971. In reply to your questions, where I have used the statute number, all comments will apply to the numbered statute as amended. The term condemnor as used in this opinion refers only to the fact that the public or quasi-public agency involved in the property transaction has the power of condemnation. It does not indicate that the use or threatened use of such power is involved in the transaction.
Your first question: *Page 169 
"Is a local governmental unit required under provision of Chapter 32, Wis. Stats., to pay relocation benefits and provide relocation services in those cases where the owner of the property to be acquired initiates negotiations for the acquisition?"
Section 32.19 (2) (c), Stats., defines displaced person:
"`Displaced person' means any person who moves from real property or who moves his personal property from real property on or after July 1, 1970, as a result of the acquisition of such real property, * * * or subsequent to the issuance of a jurisdictional offer under this chapter, for public purposes or, as the result of the acquisition for public purposes of other real property on which such person conducts a business or farm operation."
This definition is important because, as will be shown, certain benefits of the act require that the beneficiary be a "displaced person."
Section 32.19 (3) (a), through sec. 32.19 (3) (c), Stats., establishes certain benefits which shall accrue to "displaced persons." The same observation is true in regard to sec. 32.19
(4) (b), Stats. Section 32.25 (1), Stats., is a prohibition against acquisition of property by a condemnor prior to filing and having approved a relocation payment and assistance service plan where the project will result in displacement of persons.
The only provision which does not specifically refer to a "displaced person" is sec. 32.19 (4) (a), Stats. This section provides for payment in excess of fair market value for certain owner-occupied dwellings. The recipient owner-occupant must have been such not less than 180 days prior to "initiation of negotiation." The question presented is whether the owner-occupant must be a "displaced person." The legislative intent is expressed in sec. 32.19 (1), Stats.
"The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired and other losses hereinafter described and suffered as the result of programs designed for the benefit of the public as a whole; * * *" (Emphasis supplied.) *Page 170 
In construing an ambiguous statute, the Supreme Court has said that a declaration of legislative purpose is persuasive. State exrel. Harvey v. Morgan (1966), 30 Wis.2d 1, 10, 139 N.W.2d 585. In addition, a nonprofit organization "if otherwise eligible" is defined in sec. 32.19 (4), Stats., as a "displaced owner."
The payments and benefits provided in ch. 409, Laws of 1969 as amended, constitute compensation for inconvenience and other losses rather than compensation for property acquired by the condemnor. Consequently, such payment and benefits fall outside of Constitutional just compensation. Section 32.19 (1), Stats. See Cudahy Bros. Co. v. United States (1946), 155 F.2d 905. Such payments and benefits constitute an expenditure of public money and must be for a public purpose. West Allis v. Milwaukee County
(1968), 39 Wis.2d 356, 376, 159 N.W.2d 36. Where a person is displaced by a public project, it is reasonable to say that such displacement was for a public purpose. On the other hand, where a person is displaced because of an intervening personal reason rather than as the result of a public project, it is doubtful that the expenditure of public money as provided in amended ch. 409, Laws of 1969, would be for a public purpose. In construing a statute, it is common policy to construe the statute in a manner which would protect its constitutionality. Town of Madison v.City of Madison (1955), 269 Wis. 609, 70 N.W.2d 249. Consequently, I would construe sec. 32.19 (4), Stats., as applying to a "displaced" owner-occupant.
Under normal situations, a sale to a condemnor is treated as a forced sale rather than a voluntary arms length transaction. This is because the seller is not free to absolutely refuse to sell or to demand an exorbitant price. 6 Nichols on Eminent Domain, § 24.261 (1965) at pp. 94-97; accord: Milwaukee v. Diller (1927),194 Wis. 376, 383-384, 216 N.W. 837; Blick v. Ozaukee County
(1923), 180 Wis. 45, 46-47, 192 N.W. 380. Where, however, the property owner is free absolutely to refuse to sell or to demand an exorbitant price and such property owner attempts to enter into a sale of the property to a condemnor, the sale is a voluntary arms length transaction, not a forced sale. The property owner is not displaced by any action of the condemnor. Under such circumstances, it is reasonable to assume that the sale is as much for the benefit of the property owner as it is for the public. In the absence of other considerations, I am of the *Page 171 
opinion that ch. 32, Stats., does not require the payment of relocation benefits or the providing of relocation services in such a situation. In certain circumstances, however, the payment of such benefits or the provision of such services may in fact constitute a benefit to the public. An example would be a situation where payment of such benefits and the provision of such services would result in the acquisition of the property at a saving which might not be realized if it was necessary to wait until the condemnor found it necessary to resort to acquisition through power of eminent domain.
Where the condemnor is proceeding to acquire the property under secs. 32.05 or 32.06, Stats., the condemnor is authorized to negotiate with the property owner not only the fair market value for the property acquired but the benefits that the property owner may be entitled to under sec. 32.19, Stats. It would seem only reasonable that if the condemnor could negotiate for payment of such benefits when acquiring the property pursuant to a condemnation statute, the condemnor would also have the authority to include consideration of such benefits in his negotiations where the transaction is a willing seller-willing buyer sale.
Some confusion may be created by the use of the term "initiation of negotiations" as it appears in sec. 32.19 (4) (a), Stats. Section 990.01 (1), Stats., provides:
"GENERAL RULE. All words and phrases shall be construed according to common and proven usage; but technical words and phrases and others that have a peculiar meaning in the law shall be contrued according to such meaning."
The term negotiation as used in sec. 32.05 (2a), Stats., is part of the condemnation procedure, is a valuable property right of the owner of private property and a jurisdictional prerequisite to the public acquisition of private property by exercise of eminent domain. Wisconsin Town House Builders v. Madison (1967),37 Wis.2d 44, 45, 154 N.W.2d 232; Connor v. Michigan WisconsinPipe Line Co. (1962), 15 Wis.2d 614, 624, 113 N.W.2d 121;Arrowhead Farms, Inc. v. Dodge County (1963), 21 Wis.2d 647,651-652, 124 N.W.2d 631. When the condemnor enters into negotiation as provided in sec. 32.05 (2a), Stats., the condemnor is establishing a jurisdictional step necessary to the acquisition of the property providing an agreed price cannot be achieved. Where a word or phrase in a statute is *Page 172 
definite in meaning in one case, and subject to two constructions in another, the clear and definite construction will prevail.
". . . A general rule is that `the construction is to be on the entire statute; and where one part is susceptible indifferently of two constructions, and the language of another part is clear and definite, and is consistent with one of the two constructions of which the former part of the statute is susceptible, and is opposed to the other construction, then we are to adopt that construction which will render all clauses of the statute harmonious, rather than that other construction which will make one part contradictory to another.'" Standard Oil Co. v.Industrial Commission (1940), 234 Wis. 498, 501-502,291 N.W. 826, [citing 2 Lewis' Sutherland, Statutory Construction (2nd ed.), p. 700, § 366].
As used in ch. 32, Stats., "negotiation" has a peculiar meaning in the law. See Milwaukee v. Diller supra; 6 Nichols on Eminent Domain (1965), § 24.261, pp. 94-97; Osborne v. State (1967, Dane Co. Cir. Crt. #125046). Consequently, the phrase "initiation of negotiation" as used in sec. 32.19 (4), Stats., must be construed to mean negotiation as authorized by sec. 32.05 (2a), Stats., or the attempt to arrive at an agreed price as provided in sec. 32.06 (2a), Stats.
The establishment of a master plan or the promulgation of an official map are exercises of the police power and do not constitute a taking for which just compensation must be paid.
"* * * it is a general rule that the planning or plotting of a public improvement does not amount to a taking of the affected property. [Authorities cited]." City of Tucson v. Melnykovich
(1969), 457 P.2d 307, 311; McQuillan, Municipal Corporations, sec. 32.31 (1971 Cum. Supp.), p. 33; State ex rel. Evans v. Jamesand others, Supervisors of Greenfield (1854), 4 Wis. 408; City ofMiami v. Romer (1954), 73 S. 2d 285, 286-287.
In the situation you have outlined in your letter, the property owner is aware of the county park commission's plan to expand Carver Park. The county board's resolution does not authorize the commission to acquire private property by eminent domain. In fact, the commission is only authorized to acquire property "offered by willing sellers." Under those circumstances, it cannot be said that a *Page 173 
cloud of condemnation pervades the transaction. Consequently, there is no issue of Constitutional just compensation.
In order to qualify for statutory just compensation as provided by amended ch. 409, Laws of 1969, the property owner or tenant must be displaced by the project, and the expenditure of public money to provide the payments and services must be for a public purpose. The property owner who offers his property must be presumed to have an intervening personal reason for relocation, and as such would not be displaced by a public project, nor would his displacement be for a public purpose. A different set of facts might support an objective determination otherwise, but under the specific situation presented, amended ch. 409, Laws of 1969 benefits and assistance would not be legally required.
In reply to your second question which asks, "May a local governmental unit . . . avoid these payments and services by requiring the seller of property to deliver vacant property . . ." the exercise of objective discretion is called for. If the tenants are required by the property owner to remove themselves from the property for the reason that the property owner is intending to negotiate a sale of the property to the condemnor, there is a probability that the tenant would qualify as a displaced person. Each fact situation must be decided upon its own merits, however. If the tenants have moved of their own accord and the property owner has allowed the property to remain vacant, no one has been displaced by the project. By the same token, if the tenant at the time of entry into the property had entered into a contract with the property owner, whereby his tenancy would terminate upon sale of the property to the condemnor, there is a probability that the tenant would not qualify as a displaced person because the displacement was a condition of his contract. Once again objective discretion based upon the specific facts must be exercised in each case.
In answer to your third question, wherein you inquire about remedies available to the department to compel compliance with ch. 32, Stats., your attention is called to sec. 32.26 (3), Stats.
RWW:EGY *Page 174