87   536
97   553

PRICE, Appellant, vs. OAKFIELD HIGHLAND CREAMERY COMPANY, Respondent.

*March 24 — May 1, 1894.*

*Nuisance: Injunction.*

A creamery company will be enjoined from causing offensive waste matter to flow upon another's pasture to the injury thereof.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was commenced September 27, 1892, to restrain the defendant from throwing out any of its waste matter, consisting of whey, buttermilk, washings, slops, or other foul matter, anywhere about its premises, so as to run upon the plaintiff's adjoining lands, and to abate the same as a nuisance, and for damages, with costs and disbursements. The complaint contains the usual allegations in such cases. The defendant answered by way of admissions, denials, and counter allegations.

At the close of the trial the court found as matters of fact to the effect that the plaintiff was at the time of the commencement of this action, and had for many years prior thereto been, the owner of a life-estate in and in possession of the quarter section of land described; that the defendant owned and occupied the adjoining lands; that there is a highway on the line between; that the defendant built a creamery factory upon its land for the manufacture of butter from milk; that said factory is located about eight rods from the plaintiff's residence, and upon the opposite side of said highway; that before building said factory the plaintiff notified the defendant that he would hold it responsible for any damage he might sustain by reason of said factory; that in May, 1890, the defendant began the operation of said factory, and threw out its waste matter on its own premises and also on the highway in close proximity to the plaintiff's residence; that soon after the defendant dug a well on its premises for the reception of all whey, washings, and other waste matter from said factory, but that before the commencement of this action the defendant ceased to use said well or to throw out its waste matter on the highway or street near the said residence, and laid and connected iron pipes from its said factory along the highway to a point about forty rods from the residence of the plaintiff, to a ditch that had been

dug to carry off such waste, and the same ran across the plaintiff's lands; that said pipes were sufficiently large to carry, and actually did carry, away all the whey, washings, and other waste matter of said factory to the ditch so dug to carry off such surface water; that the plaintiff sustained no damage by reason of the washings and waste matter of the factory running upon or through his lands; that such whey and washings did not create a great stench near the residence of the plaintiff, nor did it contaminate the water or injure the wells of the plaintiff; that the illness of the plaintiff's wife was not caused by the operation of the factory, nor from the foulness of any waste matter connected therewith; that the actual rental value of the plaintiff's lands was not diminished by reason of the operation of the factory; that in August, 1892, the plaintiff served notice on the defendant to abate the alleged nuisance mentioned; that at the commencement of this action the running and operation of the defendant's factory was not a nuisance.

As conclusions of law, the court found that the plaintiff was not entitled to the relief demanded in the complaint, but that the same should be dismissed, and that the defendant was entitled to judgment accordingly, with costs and disbursements. From the judgment entered accordingly the plaintiff appeals.

For the appellant there was a brief by *Colman & Sutherland*. They contended, *inter alia*, that running liquid matter containing organic substances upon the land of another, even though it could not be disposed of in any other way, was a nuisance. *Penruddock's Case*, 3 Coke, Part V, 101; Wood, Nuisances, §§ 96–115; *Ball v. Nye*, 99 Mass. 582; *Gould v. McKenna*, 86 Pa. St. 297; *Brown v. Illius*, 25 Conn. 583; *Wilson v. New Bedford*, 108 Mass. 261; *Washburn v. Gilman*, 64 Me. 163; *Bellows v. Sackett*, 15 Barb. 96; *Underwood v. Waldron*, 33 Mich. 232; *McCarty*

*v. Boise City C. Co.* 2 Idaho, 226; *Jutte v. Hughes,* 67 N. Y. 267; *Mairs v. Manhattan R. E. Asso.* 89 id. 498, and cases cited on p. 505; Gould, Waters, § 278.

*Edward S. Bragg,* of counsel for the appellant, argued, among other things, that the acts complained of were an invasion of private property and constituted a private nuisance, and damage is the result *per se* without further proof. It is *an injury to a right* that supports the cause of action. *Lansing v. Smith,* 4 Wend. 30, 31; Wood, Nuisances (1893 ed.), § 97; 1 Pom. Eq. Jur. § 252; *McGenness v. Adriatic Mills,* 116 Mass. 177; *Parker v. Winnipisogee L. C. & W. Co.* 2 Black, 551. When the invasion is continuous and threatens for the future, the damages being merely nominal, equity takes jurisdiction because the remedy at law is inadequate, awards damages for all previous injuries, and prevents future injury by injunction. R. S. § 3180; 1 Pom. Eq. Jur. § 252; 3 id. § 1350; 2 Wood, Nuisances, §§ 778, 779, and notes.

For the respondent there was a brief by *Duffy & McCrory,* and oral argument by *J. H. McCrory.* They contended, *inter alia,* that before the plaintiff is entitled to an injunction he must show that he has sustained damage to his property, either in its use or in its value. *Stadler v. Grieben,* 61 Wis. 500; *Greene v. Nunnemacher,* 36 id. 55; *Stetson v. Faxon,* 19 Pick. 147; *Fall River Iron Works v. O. C. & F. R. R. Co.* 5 Allen, 221; *Enos v. Hamilton,* 27 Wis. 256; *Houck v. Wachter,* 34 Mich. 265.

CASSODAY, J. The plaintiff's land runs along on the north side of the highway. His residence is on the southeast corner of his land. The defendant's creamery is situated just south of the highway, and nearly opposite the plaintiff's residence. Near the creamery the defendant constructed a well or cesspool, into which the waste matter from the creamery was caused to flow. The bed rock of

that cesspool appears to have been more elevated than the bed rock of the plaintiff's well. The result was that the waste matter from the cesspool percolated through the soil, and passed into the plaintiff's well, and destroyed its usefulness. Upon complaint being made, the defendant ceased to use the cesspool, and caused such waste matter to flow eastward along the south side of the highway, for about twenty rods, through a tiling or iron tube; and from there caused the same to flow eastward along the south side of the highway, for about twenty rods further, in an open ditch, to a depression in the ground, where the land descended northward, and from whence the waste was carried by a culvert under the highway, and then allowed to flow northward onto the plaintiff's pasture land for a distance of eighteen or twenty rods. This waste matter from the creamery, not only in the plaintiff's well but along the open ditch and also in the plaintiff' s pasture, would soon become thickened at the top, and of a grayish or greenish color, emitting a stench more or less disagreeable, depending upon the duration of its presence. From the very nature of things it must have been, at least to some extent, injurious to the soil and the pasture, if not the cattle therein. Such facts appear to be fairly established by the evidence. The question recurs whether the defendant has the legal right to thus perpetually invade the possession and premises of the plaintiff.

Undoubtedly, a nuisance, to be actionable, must materially affect or impair the comfort or enjoyment of the person complaining, or the use or value of his property. *Stadler v. Grieben,* 61 Wis. 500. This court has held that any business, though in itself lawful, which necessarily impregnates large volumes of the atmosphere with disagreeable, unwholesome, or offensive matter, may become a nuisance to those occupying adjacent property, in case it is so near, and the atmosphere is contaminated to such an extent, as

to substantially impair the comfort or enjoyment of such adjacent occupants. *Pennoyer v. Allen*, 56 Wis. 502. In such case it is no defense that the business was conducted in a reasonable and proper manner and with ordinary cleanliness, and that the odors sent over and upon the adjacent premises were only such as were incident to the business when properly conducted. *Ibid.*

At an early stage of the trial in the case at bar the court in effect expressly ruled that the case would be determined on the condition of things as they were in 1892, and not as they were before the new drain was constructed, and hence that all testimony in regard to the condition of things in 1890 and 1891 would be regarded as immaterial. It may be that at the time of the commencement of this action, and for a short time before, the atmosphere in and about the plaintiff's residence was not contaminated to such an extent as to substantially impair his comfort or enjoyment of the same, and hence that an injunction should not be granted upon that ground alone. But the case presented is not confined to the contamination of the atmosphere, even in 1892. On the contrary, the filth from the defendant's creamery was then actually being cast upon the plaintiff's premises. The case is different from the mere pollution of the atmosphere or the waters of a natural stream by some customary use while passing over the defendant's premises. It is worse. It is the invasion of the plaintiff's premises with an offensive foreign substance by means of artificial appliances.

In *Tenant v. Goldwin*, 1 Salk. 360, 2 Ld. Raym. 1092, Lord HOLT, C. J., said: "If the defendant has a house of office [privy], and the wall which separates the house of office from the plaintiff's house is all the defendant's, he is, of common right, bound to repair it. . . . The reason is that every one must so use his own as not to do damage to another. And, as every man is bound so to look to his

cattle as to keep them out of his neighbor's ground that so
he may receive no damage, so he must keep in the filth of
his house of office that it may not flow in upon and dam-
nify his neighbor." That case has frequently received
sanction in the English courts. Thus, in *Ballard v. Tom-
linson*, L. R. 29 Ch. Div. 115, the plaintiff and defendant
were adjoining landowners, and had each a deep well on
his own land; the plaintiff's land being at a lower level
than the defendant's. The defendant turned sewage from
his house into his well, and thus polluted ′ the water that
percolated under ground from the defendant's land to the
plaintiff's, and consequently the water which came into the
plaintiff's well from such percolating water, when he used
his well by pumping, became adulterated with the sewage
from the defendant's well, and it was held that the plaint-
iff had a right of action against the defendant for so pol-
luting the source of supply. The language of LINDLEY,
L. J., is quite applicable here. On page 126 he said:
" *Prima facie*, no man has a right to use his own land in
such a way as to be a nuisance to his neighbor; and
whether the nuisance is effected by sending filth onto his
neighbor's land, or by putting poisonous matter on his own
land and allowing it to escape on his neighbor's land, or
whether the nuisance is effected by poisoning the air which
his neighbor breathes or the water which he drinks, ap-
pears to me wholly immaterial. If a man chooses to put
filth on his own land he must take care not to let it escape
onto his neighbor's land." So the same court, within a
year, and in an opinion by the same learned lord justice,
sustained an injunction restraining the use of stables con-
structed under statutory authority, on the ground that,
although used with all reasonable care, yet they were
nevertheless used in such a way as to be a nuisance to the
plaintiff. *Rapier v. London Tramways Co.* [1893] 2 Ch.
588. That case and others were considered by this court

in *Evans v. C., St. P., M. & O. R. Co.* 86 Wis. 597. In *McGenness v. Adriatic Mills,* 116 Mass. 177, a right of action was sustained for a nuisance created and maintained by discharging through a box drain filthy and polluted water upon the land of A., taken from a natural stream which had been polluted. To the same effect: *Woodward v. Worcester,* 121 Mass. 245; *Harris v. Mackintosh,* 133 Mass. 228; *Rodenhausen v. Craven,* 141 Pa. St. 546; *Lockwood Co. v. Lawrence,* 77 Me. 297; *Savile v. Kilner,* 26 Law T. (N. S.), 277; *Shotts Iron Co. v. Inglis,* L. R. 7 App. Cas. 518.

The injury inflicted upon the plaintiff and his premises is permanent in its nature. The defendant should be perpetually enjoined from causing filth to flow upon the plaintiff's premises, either directly, by percolation, or otherwise. Equity having thus acquired jurisdiction in the case, it may retain the same and adjudge to the plaintiff reasonable and adequate damages for past injuries.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings in accordance with this opinion.