J. F. RAPPEL COMPANY, Respondent, vs. CITY OF MANITOWOC, Appellant.

*September 21—December 11, 1923.*

*Municipal corporations: Negligence: Defective sewers: Flooding premises: Evidence: Sufficiency: Claim against city: Definiteness: Itemization of tort claims: Damages: Loss of profits: Trial: Evidence: To rebut claim of recent fabrication of testimony: Relevancy.*

1. Where the evidence is ample to sustain a finding either way, the verdict of the jury must stand.   p. 144.
2. That a rainfall washing débris into a city culvert, where it lodged against a sewer pipe, causing the water to back up and flood adjacent premises, was unusual for the season, did not relieve the city from liability, there being no evidence that the rainfall was in any way extraordinary.   p. 144.
3. Testimony that the construction of a sewer through a brick culvert was contrary to recognized engineering practice is sufficient to sustain a finding of negligence, there being no evidence that it was constructed pursuant to any plan.   p. 144.
4. Tort claims against a city are not included within sec. 925—134, Stats. 1919 (the general charter law), requiring that "all claims and demands" be itemized, though required to be presented to the common council for allowance or disallowance by sec. 925—58, the word "itemized" being used almost exclusively with reference to accounts, and the word "account" referring to matters resting in contract.   p. 145.

5. A claim against a city for damages in a stated amount to the stock of goods, building, and business of a named claimant because of the flooding of premises in the city on a certain date, is *held* not too indefinite, and to be sufficiently itemized, every element of a tort action having been included.   p. 145.
6. Testimony that plaintiff's witnesses had, before trial, made statements concerning the existence and location of a hole in a culvert, is admissible to rebut defendant's claim, made at the trial, that the plaintiff's testimony as to how the hole was made was recently fabricated to meet defendant's evidence.   p. 147.
7. Plaintiff is entitled to recover as part of its damages the loss of profits by interruption of business during the three days succeeding the flood.   p. 147.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge.   *Affirmed.*

This action was begun to recover damages to the real estate and personal property of the plaintiff company, alleged to have been caused by an obstruction in a culvert erected and maintained by the defendant city.   The record in the case is a very long one, the printed case containing over 425 pages.   Many questions were raised and discussed and we shall state the facts only so far as it is necessary to present the questions which we think of sufficient importance to require discussion.

From the judgment in favor of the plaintiff the defendant appeals.

*C. E. Teitgen,* city attorney, for the appellant.

For the respondent there was a brief by *Kelley & Wyseman* and *Healy & Joyce,* all of Manitowoc, and oral argument by *Harry F. Kelley* and *John J. Healy.*

The following opinion was filed October 16, 1923:

ROSENBERRY, J.   The plaintiff was the owner of lot 17, bounded on its southerly side by Franklin street and on the easterly end by Fifteenth street, in the city of *Manitowoc.*   Running diagonally across the westerly end of lot

17 and then along its northerly side was an ancient water-course, which flowed across Fifteenth street at a point oppo-site the northerly boundary of lot 17. In order to carry the street over the stream the city had constructed a brick arched culvert which discharged into an open ditch below. The plaintiff had constructed a concrete sewer joining a brick arched culvert with plank bottom, also constructed by plaintiff, on the up-stream end and with the city culvert on the down-stream end. After the city had constructed the culvert across Fifteenth street it built a domestic sewer along the center of Fifteenth street, running the sewer pipe through the culvert at a point thirty inches from its base and eighteen inches from its top, the domestic sewer being ten inches in diameter as shown on the diagram:

*Diagram showing cross-section of culvert and location of sewer in the culvert.*

On March 25, 1920, there was a heavy rain. Débris de-posited in the open ditch above the culverts constructed by the plaintiff was washed through plaintiff's culverts into the city culvert, where it lodged against the domestic sewer pipe before referred to, causing the culvert to be closed prac-tically, and as a result of which the water was backed up and the plaintiff's premises were flooded.

One of the questions hotly contested upon the trial was whether or not the damage was caused by reason of the obstruction in the city's brick culvert on Fifteenth street

or whether it was due to the insufficiency of the culverts constructed by the plaintiff upon its premises. There was ample evidence to have sustained a finding either way and the jury's verdict must stand. The defendant contends that the rainfall was of such an extraordinary character as to relieve the defendant city from liability. While it appears that the rainfall was unusual for the season of the year, there is no evidence to show that it was in any legal sense of the term extraordinary. Culverts are not made for March but for the entire year. The contention of the defendant that the plaintiff connected its concrete sewer with the city's brick arch culvert after the iron pipe had been inserted in the brick arch culvert is found against it by the jury upon sufficient evidence.

The finding of the jury that the defendant was negligent by reason of its inserting the domestic sewer as before described so as to obstruct the brick culvert is amply sustained by the evidence. It is not shown that it was constructed pursuant to any plan and the testimony is clear that it was against all recognized engineering practice to construct a domestic sewer so that it should extend through the brick culvert in the manner described. The plaintiff filed a claim as follows:

City of Manitowoc,
　　　State of Wisconsin.
To *J. F. Rappel Company,* Dr.　　　Date April 5, 1920.
　　　City of Manitowoc, State of Wisconsin.
To damages and loss caused to stock of goods,
　　　building, and business of *J. F. Rappel Com-*
　　　*pany,* a corporation, because of flooding of
　　　premises on March 25, 1920...............$16,000

The claim was duly verified and was upon the regular blank furnished by the city for filing claims. The claim was not acted upon by the council. It is contended that this does not comply with sec. 925—134 of the general charter law relating to claims, which provides:

"All claims and demands against the city shall be itemized,

verified by the oath of the claimant or some one in his behalf, and filed with the clerk, who shall deliver the same to the comptroller for examination."

By the provisions of sec. 925—58, Stats. 1919:

"No action shall be maintained by any person against any city organized under the provisions of this chapter upon any claim or demand of any kind or character whatsoever, until he shall have first presented his claim or demand to the council for allowance and the same shall have been disallowed in whole or in part; provided, that the failure to pass upon such claim or demand within sixty days after its presentation shall be deemed a disallowance thereof."

In *Van Frachen v. Fort Howard,* 88 Wis. 570, 60 N. W. 1062 (1894), it was held that a charter providing that "no action shall be maintained upon any claim or demand of whatsoever nature other than a city bond or order" applies to tort actions.

In *Flieth v. Wausau,* 93 Wis. 446, 67 N. W. 731 (1896), it was held that the words "no claim or demand" used in a city charter apply only to demands arising on contract.

Prior to the enactment of ch. 127 of the Laws of 1899, sec. 925—58 did not contain the words "of any kind or character whatsoever." It is quite significant that in the light of the decisions referred to, the amendment related solely to sec. 925—58 and made no reference to sec. 925—134, which latter section requires claims and demands to be itemized. The word "itemized" is used almost exclusively with reference to accounts and the word "account" in turn refers to matters resting in contract. It appears quite clearly, therefore, that it was not the intent of the legislature to require claims founded in tort to be itemized although they are required to be presented to the common council for allowance or disallowance. Were it otherwise, we think the claim in question is sufficiently itemized. It states the name of the owner, the character of the injury sustained, a description of the property injured, its location, and the amount of damages sustained. While it might well

have been amplified, every element of an action sounding in tort is included. It is said that the description of the property is too indefinite. The language of the claim is, "To damages and loss caused to stock of goods, building, and business of *J. F. Rappel Company.*" Under sec. 2305*m*, Stats., requiring a real-estate broker's contract to be in writing, it was held that the words "my place" were sufficiently definite to describe the seller's premises where it appears by the evidence that only one tract of land was owned by the seller, being the premises upon which he lived. The description here is equally definite.

It was the claim of the plaintiff that the backed-up water found its way into plaintiff's building through an oval-shaped aperture in the bottom of the plaintiff's concrete culvert, located at a point a short distance below where the plaintiff's concrete culvert joined the plaintiff's brick culvert. It was the claim of the defendant that the backed-up water found its way into the plaintiff's premises by reason of the defective construction of the wooden bottom of plaintiff's brick culvert and that the wooden bottom of the brick culvert gave way at or near the point where it was attached to plaintiff's concrete culvert. The plaintiff produced witnesses who testified that an oval hole in the bottom of the concrete culvert was there very shortly after the flood; the defendant produced witnesses who testified that while they were making an examination of the plaintiff's culverts some five or six weeks after the flood they made the hole in the bottom of the plaintiff's concrete culvert by pounding with a brick. The plaintiff produced a witness who was permitted, against the objection of the defendant, to testify that the plaintiff's witnesses had made statements concerning the existence and location of this hole at a time prior to a disclosure by the defendant of its claim that the hole had been made in the manner described. It is claimed that this testimony is hearsay and that its admission was error. It was the contention of the defendant

and so expressly stated upon the trial, that the testimony given by plaintiff's witnesses in regard to the existence of the hole was recently fabricated to meet the evidence to be offered by the defendant. The trial court received the testimony of the plaintiff's witness, not to prove the existence or non-existence of the hole but to rebut the claim made by the defendant that the testimony given by the plaintiff's witnesses upon that point was a recent fabrication. Both upon reason and authority this testimony was properly received. *Griffin v. Boston,* 188 Mass. 475, 74 N. E. 687; *Comm. v. Retkovitz,* 222 Mass. 245, 110 N. E. 293; 40 Cyc. 2787, and cases cited.

Plaintiff was awarded damages in the amount of $11,498.95. This included damages amounting to $481.86 for loss of profits by interruption of business during the three days succeeding the flood, March 26th, 27th, and 29th. We see no reason why the plaintiff is not entitled to recover as a part of its damages the loss so sustained.

The principles of law involved in this case are comparatively simple. The issues of fact were submitted by the trial court to the jury under proper instructions. A careful examination of the record discloses no reversible error, and the judgment of the circuit court must be affirmed.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on December 11, 1923.