HASSLINGER and wife, Respondents, vs. VILLAGE OF HART-
LAND, Appellant.

*February 15—March 12, 1940.*

For the appellant there was a brief by *Hammersley, Torke & Kelley,* attorneys, and *Charles E. Hammersley* of counsel, all of Milwaukee, and oral argument by *Charles E. Hammersley.*

For the respondents there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *Lynn H. Smith.*

WICKHEM, J.   The village of Hartland is located on the Bark river, which runs in a northerly and southerly direction through the village and through the farm of plaintiffs. Plaintiffs' farm of seventy-six and one-half acres is immediately to the south of the village, a portion of it being within the village limits.   The farm is on the east side of a county trunk highway which runs south through the village of Hartland.   In 1931 an investigation was made of the pollution of the Bark river by sewage, and as a result of reports to the state board of health the latter recommended that the village consider the installation of a waterworks and a system of sewage disposal.   The village thereupon prepared plans and specifications for water supply and sewage disposal and these were approved by the state board of health and carried into effect.   The plans included a sewage disposal plant located on a half acre of land adjoining plaintiffs' land on the south.   The plant is two hundred twenty-five feet south of plaintiffs' barn and three hundred forty-five feet south of the house.   Other sites were available and considered, one of them about one thousand feet further south on the same highway and near no human habitation.   The plant was constructed and put in operation early in 1934. From that time plaintiffs claim to have been annoyed by offensive odors which pervaded the atmosphere of the farm and buildings and were particularly noticeable in damp weather or when the wind was from the southwest.   The testimony is in conflict as to the nature and intensity of the odors as well as the extent to which they pervaded plaintiffs'

dwelling and barns. The findings are to the effect that the plant "has frequently given off foul, offensive and disagreeable odors extremely repulsive to human sense and which smells have pervaded the residence, barns, outbuildings and premises of the plaintiffs, compelling them to keep their windows closed, preventing them from sleeping, disturbing their social relations, and generally interfering with the enjoyment and use of their residence, barns and outbuildings; that such odors were especially noticeable when the wind was from the south or southwest, and in muggy, warm weather, and at periods when the plant was in operation; that these odors were obnoxious, offensive, disagreeable and at times unbearable and that they materially interfered with the plaintiffs' use and comforts which they would be entitled to in their home and around and about their premises; that these odors have continued from the commencement of operations at the plant up to and including the time at which this action was tried."

We do not deem it necessary to review in detail the evidence on this subject. We are of the opinion that the findings of the trial court in this respect were supported by the evidence, and if that were the sole question upon this appeal the judgment would have been affirmed without opinion. Before considering the law applicable to the case it should be pointed out that the trial court did not find that the specifications or construction of the plant were deficient or that its operation was negligent or insufficient in any particular. In fact, the finding is that there appears to be no changes in plan or operation by which the odors may be eliminated. The significance of this will hereafter appear.

Defendant's first contention is that plaintiffs have no standing to recover in this action for the reason that they failed to file a claim as provided by sec. 61.51, Stats., which provides:

"No account or demand against the village shall be paid until it has been audited and allowed and an order drawn on

the treasurer therefor. Every such account shall be made out in items and verified by affidavit indorsed or annexed that the same is just and correct and no part thereof paid. . . . The board shall cause to be indorsed by the clerk, over his hand on each account, the words 'allowed' or 'disallowed,' as the fact is. . . ."

In connection with this section and its requirements defendant cites *J. F. Rappel Co. v. Manitowoc,* 182 Wis. 141, 195 N. W. 399; *Sauk County v. Baraboo,* 211 Wis. 428, 248 N. W. 418; *Read v. Madison,* 162 Wis. 94, 155 N. W. 954; *Joyce v. Sauk County,* 206 Wis. 202, 239 N. W. 439. We deem this position not to be well taken. Where the action is for equitable relief (as for abatement of a nuisance by injunction) no claim need be filed under this or statutes having a similar purpose. *Davis v. Appleton,* 109 Wis. 580, 85 N. W. 515; *Carthew v. Platteville,* 157 Wis. 322, 147 N. W. 375.

It is next contended that if plaintiffs are entitled to any relief, they must seek it under ch. 32, Stats., regulating the exercise of the powers by eminent domain. Cases principally relied upon are *Skalicky v. Friendship E. L. & P. Co.* 193 Wis. 395, 214 N. W. 388; *Benka v. Consolidated Water Power Co.* 198 Wis. 472, 474, 224 N. W. 718. In the latter case it was said:

"The damages, the right to which is asserted by plaintiffs, being caused by that which, in law, under such a situation, must be deemed a taking of the property rights of plaintiffs, and within sec. 32.04, Stats. . . .

"There being such a statutory remedy furnished to plaintiffs in just such a position as here presented, namely, one where a defendant denies that there is any such taking and for that reason refuses to commence condemnation proceedings, then it is clearly the legislative purpose to permit the owners of the lands to institute proceedings to once and for all recover the damages consequent upon such taking."

To the effect that the remedy under ch. 32, Stats., is exclusive, defendant cites *Price v. Marinette & M. P. Co.* 197

Wis. 25, 221 N. W. 381; *Milwaukee v. Diller,* 194 Wis. 376, 216 N. W. 837. This contention is without merit. Assuming an actionable nuisance by the creation of odors which make occupation of plaintiffs' farm inconvenient or distasteful and impair its value, it cannot be said that defendant has dispossessed plaintiffs or taken their property. There was no such taking in this case as would invoke the provisions of ch. 32. *Baerwolf v. Wisconsin River P. Co.* 198 Wis. 112, 223 N. W. 571; *Price v. Marinette & M. P. Co., supra.*

It is next contended by defendant that the statutes have vested the state board of health with full jurisdiction over sewage disposal and nuisances affecting public health or comfort, and apparently this includes the further claim that the effect of statutory provisions is to oust the courts of all jurisdiction in this connection. Sec. 144.03 (1), Stats., provides in part:

"The state board of health shall have general supervision and control over the waters of the state, drainage, water supply, water systems, sewage and refuse disposal . . . in so far as their sanitary and physical condition affects health or comfort."

Sec. 144.03 (3), Stats., provides:

"If the board finds that a system or plant is tending to create a nuisance or menace to health or comfort, it shall order the owner or the person in charge to secure such operating results as the board shall prescribe, within a specified time. If the order is not complied with, the board may order designated changes in operation, and if necessary, alterations or extension to the system or plant, or a new system or plant."

Sec. 146.14, Stats., provides in part:

"The state board of health may order the abatement or removal of a nuisance on private premises, and if the owner or occupant fails to comply, the board, or its agent, may enter upon the premises and abate or remove such nuisance."

Defendant's claim, based upon sec. 144.03, Stats., is that where the administration of a particular matter has been committed to an administrative body with power to issue orders, make regulations, or prescribe specifications, these orders, regulations, or specifications, unless wholly arbitrary, are conclusive as to the safety or sufficiency of operation in compliance with them. *Bent v. Jonet,* 213 Wis. 635, 252 N. W. 290. Applied to this case, it is claimed that a sewage disposal plant which follows approved specifications cannot be held a nuisance. This contention is inapplicable to the present situation. It may be that if the claim of the adjoining landowner is that the manner of operation is such as to constitute a nuisance, the fact that the plant was built according to specifications of the state board of health and is being operated in accordance with their orders and regulations may conclusively establish that there is no nuisance arising out of design or operation of the plant. Where, however, the claim is that the plant is a nuisance, not by reason of improper operation or planning, but because of its location, the owner is not concluded by the orders or approval of the state board of health. It is, of course, unnecessary here to determine the scope or conclusiveness under sec. 144.03 (3), Stats., of a finding by the board that a sewage disposal plant does constitute a nuisance. There is no such finding in this case. Sec. 146.14, Stats., is inapplicable since it deals only with nuisances upon private premises.

The claim that failure by the village to obey orders of the state board of health would subject it to a penalty under the statute, and that since the plant conforms to the orders of the board it should not be held a nuisance, is in substance a repetition of the preceding contention. We have nothing to add to what was said in disposing of that contention other than to point out that the board of health did not require the village to build the sewage disposal plant or to build it

in its present location. All it did was to approve the plans and specifications for the plant. While plans included the location of the sewage disposal plant, and the latter may have been within the scope of the board's approval, it was not within the competency of the board to foreclose a judicial determination whether by reason of location the plant would be a nuisance *per se*.

The next contention is based upon the governmental character of the operation and the claimed immunity of the village where it is discharging a governmental function. The operation of this plant concededly constituted the exercise of a governmental function, and the village sustains no liability for negligence in the operation of this function, but it is not thereby exempted from liability for the maintenance of a nuisance. *Hughes v. Fond du Lac,* 73 Wis. 380, 41 N. W. 407; *Gilluly v. Madison,* 63 Wis. 518, 24 N. W. 137; *Schroeder v. Baraboo,* 93 Wis. 95, 67 N. W. 27; *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420; *Winchell v. Waukesha,* 110 Wis. 101, 85 N. W. 668. Two cases are cited by defendant as establishing a contrary rule applicable here. These are *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579, and *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341. In each of these cases, however, the alleged nuisance resulted from the negligent acts of village officers acting in a governmental capacity and in each the relation between the village and the person injured was that of governor and governed. The cases are inapplicable here, first, because the nuisance alleged in this case does not arise from the negligent acts of the village officials, and, second, because, while the village is discharging a governmental function in maintaining a sewage disposal system, its relation to these plaintiffs in this case is that of one proprietor to another, as in the *Winchell Case, supra,* where a city was held liable for the maintenance of a nuisance by discharging sewage into a

navigable river about one-quarter of a mile above plaintiffs' farm. See also *Mitchell Realty Co. v. West Allis,* 184 Wis. 352, 199 N. W. 390, 35 A. L. R. 396.

We now come to the plaintiffs' theory of liability. Plaintiffs contend that defendant's sewage disposal plant as it is located in the immediate vicinity of a habitation is a nuisance *per se,* and that it was not only possible but practicable to erect this plant sufficiently distant from any human habitation so that it would not be a nuisance. Plaintiffs assume that the plant was adequately designed and equipped, and properly operated, but claim that the fact that foul and noxious odors nevertheless pervade its immediate vicinity renders it a nuisance as to dwellings within this area. While the matter presents some difficulty, we are of the opinion that the contention is sound. That the location of an otherwise lawful business may determine its character as a nuisance has been recognized in several cases. In *Cunningham v. Miller,* 178 Wis. 22, 189 N. W. 531, the location of a funeral parlor in a residence neighborhood was held to be a nuisance. So also a garage was held to be a nuisance when located in a residence neighborhood. *Ballstadt v. Pagel,* 202 Wis. 484, 232 N. W. 862. In *Pennoyer v. Allen,* 56 Wis. 502, 511, 512, 14 N. W. 609, this court stated:

"The question of nuisance, therefore, depends not only upon the character of the business maintained, but its proximity to the dwellings, business, property, or occupancy of others. . . . It follows that any business which necessarily and constantly impregnates large volumes of the atmosphere with disagreeable, unwholesome, or offensive matter, may become a nuisance to those occupying adjacent property, in case it is so near, and the atmosphere is contaminated to such an extent, as to substantially impair the comfort or enjoyment of such adjacent occupants. . . . A business necessarily contaminating the atmosphere to the extent indicated should be located where it will not necessarily deprive others

of the enjoyment of their property, or lessen their comfort while occupying the same."

See also *Price v. Oakfield Highland Creamery Co.* 87 Wis. 536, 58 N. W. 1039; *Holman v. Mineral Point Zinc Co.* 135 Wis. 132, 115 N. W. 327; *Wergin v. Voss,* 179 Wis. 603, 192 N. W. 51. Notes, 5 A. L. R. 920; 47 A. L. R. 1154.

It is our conclusion that the rule stated in *Pennoyer v. Allen, supra,* is applicable here, and that the location of this plant in the immediate vicinity of plaintiffs' house resulting in contamination of the air by dissemination of foul and noxious odors has so substantially impaired the comfort and enjoyment of plaintiffs' occupation of their premises, and has so impaired the value of their property as to constitute a nuisance as to them. We appreciate that this is a doctrine that must be carefully limited. Sewage disposal plants and other activities which result in noxious odors may occasionally, due to weather conditions, furnish some degree of annoyance over a considerable area. What is here held does not include the opinion that the maintenance of such activities constitutes a nuisance over such a wide area. We prefer to limit this holding to the facts of this case and to hold that where, as here, it appears that defendant placed its plant so close to plaintiffs' dwelling as to bring it within the area in which odors from the plant normally, frequently, and regardless of unusual weather conditions, produce an extreme degree of contamination of the air, the plant constitutes a nuisance by reason of its close proximity to plaintiffs' premises. That this area is quite circumscribed in this case is evidenced by plaintiffs' concession that the conditions which constitute a nuisance would not have been present had the plant been located about one thousand feet further south on the same highway.

On the subject of damages the trial court found that presence of the plant near the residence and buildings of plain-

tiffs materially impaired its market value because of odors that emanate from the plant. The objection is that the court has found very large damages for what amounts to occasional annoyances and inconvenience. This contention cannot be sustained. There is substantial evidence supporting the trial court's conclusion that the odors are foul and noxious, and that they come to plaintiffs' habitation frequently enough to constitute something more than a mere inconvenience or annoyance. There is competent evidence to the effect that the odors would prevent a sale of the premises at their otherwise reasonable value. We find nothing in the findings to indicate that the trial court assessed any damages because of the proximity to plaintiffs' house of the physical structure constituting the plant. The damages found were and should be based only upon the odors involved in its operation.

It is next contended that this nuisance was abatable and that the measure of damages is the diminution of rental value and not the depreciation in the market value. This is based upon the fact that there no physical damage or destruction was involved, that all damage would cease and the value of the premises be wholly restored if the odors were abated. According to the findings of the trial court, which we deem to be sufficiently supported, the nuisance cannot be abated by improvement in operation. Abatement by removal of the plant was resisted by defendant and not insisted upon by plaintiffs and hence we cannot assume that abatement in this respect was proper or practicable, or that there was likelihood of a voluntary removal of the plant. In *Karns v. Allen,* 135 Wis. 48, 115 N. W. 357, where the nuisance consisted of the maintenance of a dam, the court sustained a finding of a loss of rentals to the property caused by noxious odors resulting from the maintenance of a dam, and on the other hand intimated that injury to the freehold by property actually washed away would be determined by the diminu-

tion in the value of the freehold from these physical injuries. It was not held, however, that injury to the freehold could not be assessed where the nuisance consisted of noxious odors. It is objected that if defendant decides to change the location of the plant or finds means later to render it odorless, plaintiffs will have both damages and the unimpaired use of their premises as well as an undepreciated market for the farm at full price. This contention offers difficulty, but it is a difficulty always present where permanent damages are awarded for something less than the complete or partial physical destruction of property. It is always possible that the nuisance will cease for one reason or another. Where, as here, the structure is permanent in character, incapable when properly operated of avoiding the conditions which constitute a nuisance, and impractical to abate, a trial court is justified in concluding that both it and the damages are permanent in character. For a general discussion of the subject see Damages for Anticipated Injury to Land, Charles T. McCormick, 37 Harvard Law Review, 574.

Defendant contends that the award is excessive, but we consider that the evidence of persons familiar with the real-estate market and the factors which operate on prices was sufficient to warrant the findings.

Numerous errors in respect to the admission or rejection of testimony are urged. We have examined each and have found no prejudicial error. We do not consider it necessary to discuss these assignments in detail.

*By the Court.*—Judgment affirmed.