ARROWHEAD FARMS, INC., Appellant, v. DODGE COUNTY, Respondent.

*November 1—November 26, 1963.*

648

For the appellant there were briefs and oral argument by *Ken Traeger* of Gresham.

For the respondent the cause was argued by *A. J. Feifarek,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general. *Leo C. Hartman* of Juneau also argued.

WILKIE, J. Three issues are presented by this appeal.

1. *Could the property owner object to the jurisdiction of the circuit court over the question of the adequacy of compensation awarded by the condemnation commission, on the grounds that the condemnor refused to negotiate with him prior to the commission hearing, when the property owner did not raise the issue of failure to negotiate within forty days from the date of personal service of the jurisdictional offer?*

Sec. 32.05, Stats., sets forth in great detail the procedure to be followed in condemning land for the purposes of highway construction.

(1) The appropriate public authority initiates the process by making a relocation order, including a map showing the lands affected.

(2) Agents of the condemnor appraise the property.

(3) The condemnor and the property owner are to enter into negotiations on the issue of just compensation.

(4) The condemnor will then make a formal jurisdictional offer to purchase, setting forth an itemized analysis of the compensation offer.

(5) The property owner may appeal the adequacy of the award to the county condemnation commissioner.

(6) Pursuant to sec. 32.05 (10), Stats., the property owner may appeal the commission's award to the circuit court. This subsection provides, "The sole issues to be tried

shall be questions of title, . . . and the amount of just compensation to be paid by condemnor."

(7) Under the provision of sec. 32.05 (5), Stats., all other issues may be presented to the circuit court within forty days after the owner's receipt by personal service of the jurisdictional offer. Sec. 32.05 (5) further provides:

". . . If the action is not commenced within the time limited the owner or other person having any interest in the property shall be forever barred from raising any such objection in any other manner. . . ."

This statutory scheme provides an orderly method of resolving the disputes involved in the exercise of the eminent-domain power.

The property owner may actively participate in every phase of the compensation-fixing process. The statute provides for judicial review of every jurisdictional requirement involved in the process. The only obligation upon the property owner is that he raise jurisdictional objections in a timely and orderly fashion.

The matter of just compensation is the crucial issue in any public taking. The statute permits both the administrative body and the circuit court to devote full attention to this substantive matter without having the deliberations deflected into consideration of collateral procedural matters, by requiring the owner to raise all objections, other than the adequacy of compensation, within forty days after receipt of the jurisdictional notice. Receipt of the jurisdictional notice precedes an administrative determination of just compensation. Therefore, if the procedure set forth in sec. 32.05, Stats., is followed, all collateral procedural issues will be resolved before either the administrative body or the court turns to the matter of just compensation.

In the instant case, the condemnor stipulated that it did not negotiate with the property owner as required by sec.

32.05 (2a), Stats. Because such negotiation is a necessary condition of conferring jurisdiction upon the administrative body and the court to determine just compensation, the judgment would be invalid if the property owner had raised the issue in timely fashion.[1] However, the property owner did not challenge the failure to negotiate until November, 1961, although the jurisdictional offer was made in October, 1960. Because the owner failed to assert his right within the forty-day period, by the terms of sec. 32.05 (5), Stats., he is "forever barred from raising any such objection in any other manner."

2. *Is hunting-site value of the owners' land a proper element to be included in the measure of just compensation?*

The trial court included $2,100 for damage to the value of the Arrowhead land as a hunting site as part of the overall award of $3,850. Although the respondent argues that to include the hunting-site value of the land as a measure of just compensation is to create a private property right on wildlife, long recognized as part of the public domain,[2] neither the county nor the state has filed a cross appeal seeking to reduce the judgment by the amount included for hunting-site improvements. Accordingly, we make no ruling here on whether hunting-site value of land should properly be considered as an element in the measure of just compensation.

3. *Is the award of $3,850 against the great weight and clear preponderance of the evidence?*

The trial court must determine the difference between the fair market value of the tract as a whole before and after the

[1] *Kultgen v. Mueller* (1958), 3 Wis. (2d) 346, 88 N. W. (2d) 687; *Kultgen v. State Highway Comm.* (1961), 12 Wis. (2d) 261, 106 N. W. (2d) 917.

[2] *State v. Herwig* (1962), 17 Wis. (2d) 442, 117 N. W. (2d) 335.

taking,[3] assuming hunting-site use to be the most-advantageous use of the land.

In determining fair market value, the trier of fact, whether judge, jury, or administrative tribunal, is not bound to any specific figure in evidence, or to any amount based on any specific formula, so long as the finding is not inconsistent with the evidence.[4]

In arriving at a damage award of $3,850, the trial court accepted the view of Mr. Francis Gutschenritter, who testified that considering the value of the land as a hunting site, the market price before taking was $15,800, and $11,950 after taking, or a damage of $3,850. Mr. Gutschenritter utilized the sales-of-similar-properties method, and the replacement-cost formula in arriving at his determination. Both techniques are permissible methods of valuation. The $15,800 figure included improvements made for the purpose of utilizing the land as a hunting site.

Emil Witte, a member of the county highway committee, also testified for the county. He stated that the county had arrived at a before value of $9,622 and an after value of $8,036, making the damages $1,586, for the taking of 3.33 acres and $250 for the limited highway easement and $400 for the fencing.

Two local realtors, John Bernard and Otto Loomans, who had considerable experience including the selling of lands in the marsh area, were called as witnesses by the county. They testified that the before value of the entire tract was $8,058, and the after value was $6,952.50, making damages of

---

[3] Sec. 32.09 (2), Stats. "In determining just compensation the property sought to be condemned shall be considered on the basis of its most advantageous use but only such use as actually affects the present market value." See also *Utech v. Milwaukee* (1960), 9 Wis. (2d) 352, 101 N. W. (2d) 57.

[4] *Utech v. Milwaukee, supra.*

$1,105.50. They added other damages as follows: $400 for fencing, $600 for reconstruction of the ditch, $200 for loss of trees, $200 for the limited highway easement, and $500 for the inconvenience during construction.

Arrowhead presented testimony of values of only one appraiser, Franklin D. Graham, who testified that the before value of the entire property was $28,500, and the after value was $3,750, leaving a total loss of $24,750, plus $250 for the limited highway easement, which made a total of $25,000. His opinion was based upon the income approach. His testimony indicated that 10 blinds could be rented for $400 per blind, that there would be a total of approximately $285.82 in expenses, leaving a net income attributable to the property of $3,714.18, which he capitalized at 13 percent.

After the taking, Mr. Graham testified that the property would only maintain three blinds at $200 per blind and that there would be expenses of $114, leaving a net income attributable to the property of $386, and this was capitalized at 13 percent, totaling $3,738 which was rounded to $3,750.

In response to questions by the court, Mr. Graham testified that he found no demand for hunting leases south of the federal refuge in the area of the subject property and he did not find any sales of property similarly situated south of the federal refuge.

Mr. Gutschenritter testified that the capitalization-of-income approach relied on by Arrowhead's experts was extremely speculative when the property is not being put to its best and highest use. Because this property was not commercially exploited, and because similar property in the area was not used as a commercial-hunting site, rentals were not well established. He further testified, because of an absence of data relating to return on hunting-site property, an appropriate capitalization rate could not be intelligently selected.

It was not unreasonable for the trial court to find that the damages totaled $3,850 based on estimates utilizing the sale-of-similar-property and replacement-cost. methods of valuation and to reject the estimates of damages submitted on the capitalization-of-income approach. The findings of the trial court were not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.