Scott N. WALLER and Lynnea S. Waller,
Plaintiffs-Appellants,

v.

AMERICAN TRANSMISSION CO., LLC,
Defendant-Respondent.

Court of Appeals

*No. 2009AP411. Submitted on briefs June 9, 2009.
—Decided October 28, 2009.*

2009 WI App 172

(Also reported in 776 N.W.2d 612.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Hugh R. Braun* of *Godfrey, Braun & Frazier, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mark J. Steichen* of *Boardman, Suhr, Curry & Field, LLP*, Madison.

Before Neubauer, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Scott N. Waller and Lynnea S. Waller appeal from an order dismissing their claims against American Transmission Co., LLC (ATC). The Wallers contend that an action pursuant to Wis. Stat. § 32.06(5) (2007–08)[1] is the exclusive remedy available to compel ATC to acquire an uneconomic remnant of their property left after ATC's acquisition of utility easements across the property. They argue that the circuit court erred when it held that the existence of an uneconomic remnant and the value of an uneconomic remnant were both issues of "just compensation" for a jury to decide under § 32.06(10). The Wallers assert that the proper forum in which to declare an uneconomic remnant and to compel the condemnor to include compensation for the remnant in its offer is in an action under § 32.06(5). We agree. Accordingly, we reverse the order dismissing the Waller's claim and direct the court to reinstate the action.

## BACKGROUND

¶ 2. The Wallers own approximately 1.5 acres of land, together with improvements, in Delavan, Wisconsin. The Wallers have used the property as their residence and for hobby farming since they purchased it in 1989. Appraisals, one on behalf of ATC and one on behalf of the Wallers, put the value of the Wallers' property at $130,000 and $132,000, respectively. On March 20, 2008, ATC served the Wallers with a jurisdictional offer for the purchase of a forty-five foot wide utility easement that would run along two sides of their triangular lot.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 3. The ATC appraiser indicated that after the easement encumbered the property, the value of the property would fall to $55,500, which represented a loss in property value of $74,500, and that "the residential improvements [were] rendered totally obsolete. Highest and best use changes from improved residential to vacant industrial land." The Wallers' appraiser opined that the value of the property would drop to $15,500 due to the ATC easement and that "the restricted use of the property and the giving up of the right to control the easement area" represented a one hundred percent loss of property value to the Wallers.

¶ 4. In a jurisdictional offer dated March 20, 2008, ATC offered the Wallers compensation for the taking of two easements in the amount of $99,500.[2] On April 25, 2008, the Wallers filed a complaint under WIS. STAT. § 32.06(5), alleging that ATC had proposed to acquire a portion of their property under terms that would leave them with an uneconomic remnant, see § 32.06(3m), and asserting that the proposed acquisition therefore compelled relocation benefits under WIS. STAT. § 32.19. The Wallers asked the court to prohibit the proposed acquisition of the utility easements.

¶ 5. On April 29, ATC petitioned the circuit court for a hearing before the Walworth County Condemnation Commission, pursuant to WIS. STAT. § 32.06(7). On May 1, the circuit court assigned the case to the commission and signed an order for ATC to take immediate possession without a hearing. The Wallers quickly moved for an expedited hearing and for a temporary injunction to stop ATC from proceeding.

[2] A notation on the offer to the Wallers indicates that ATC was willing to award the Wallers $132,000 for the taking, but that ATC would then require the Wallers to waive their right to relocation assistance under WIS. STAT. § 32.19.

¶ 6. The circuit court concluded that there was no reason to enjoin ATC from obtaining immediate possession of the property, and therefore it denied the Wallers' motion for an injunction. The condemnation commission held a hearing on June 11, 2008, and concluded (1) that the fair market value of the property was $130,000, (2) that the value was reduced to $40,000 after the taking of the easement interest, and (3) that the award to the Wallers should therefore be $90,000.[3]

¶ 7. ATC moved for summary judgment on the Wallers' complaint. The circuit court refused to consider the motion because the brief and attachments arrived after the deadline set in the scheduling order. However, the court did agree to consider the arguments raised in ATC's brief at the opening of the court trial. In its trial memorandum, ATC argued that the Wallers' case, brought under Wis. Stat. § 32.06(5), was improperly before the court because § 32.06(5) provides the procedure for contesting a condemnor's right to condemn, but not for contesting the amount of compensation offered.

¶ 8. On November 5, 2008, the day of trial, the Wallers clarified that since the filing of the complaint, "the sole issue was whether or not the Wallers had been left with an uneconomic remnant, and under the statute, whether or not ATC was obligated to acquire that uneconomic remnant." ATC argued that a fact finder "cannot determine whether there is an uneconomic remnant without consideration of the very same evidence that is used to determine just compensation for

[3] The Wallers appealed from the commission's report and award and that case is now pending before the circuit court. The matter before us is not the commission's award, but the right of the Wallers to pursue relief under Wis. Stat. § 32.06(5) in the circuit court.

the easement itself." The circuit court held that the evidence it anticipated the Wallers would offer "ha[d] to do with compensation," which was the issue in a separate pending case. The court gave the Wallers the opportunity to put an offer of proof on the record.

¶ 9. The Wallers called Kurt Kielisch, an expert witness who testified about the property appraisal. Kielisch testified in part that prior to the taking of the utility easement the "highest and best use" of the property was as it was being used, that is, for residential purposes. However, after the taking, Kielisch opined, "[B]ecause of the presence of the power line being in extreme close proximity to the residential improvements . . . it was our decision that this property would not have any viability to be sold as a residential property." The court held that an action under WIS. STAT. § 32.06(5) was limited to the question of whether a party has the right to condemn a property. It stated, "[The court is] being asked for a type of relief not envisioned and not incorporated within [§] 32.06(5)." The court dismissed the Wallers' complaint on the merits. The Wallers appeal.

## DISCUSSION

¶ 10. The Wallers present one issue on appeal. They ask whether the question of the existence of an uneconomic remnant is properly raised in an action under WIS. STAT. § 32.06(5). Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo. *Marotz v. Hallman*, 2007 WI 89, ¶ 15, 302 Wis. 2d 428, 734 N.W.2d 411. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may

be given its full, proper, and intended effect." *Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶ 6, 316 Wis. 2d 47, 762 N.W.2d 652 (citation omitted). Statutory interpretation begins with the language of the statute. *Id.* Context and structure of a statute are also important to the meaning of the statute. *Id.*, ¶ 7. Our interpretation must place the statute in the context in which it is used, must consider closely-related statutes, must give reasonable effect to every word to avoid surplusage, and must avoid absurd or unreasonable results. *Id.*

¶ 11. Here, we must interpret the text of two related statutes. First, the legislature defines an uneconomic remnant as follows:

> In this section, "uneconomic remnant" means the property remaining after a partial taking of property, if the property remaining is of such size, shape or condition as to be of little value or of substantially impaired economic viability. If acquisition of only part of a property would leave its owner with an uneconomic remnant, *the condemnor shall offer to acquire the remnant concurrently* and may acquire it by purchase or by condemnation if the owner consents.

Wis. Stat. § 32.06(3m) (emphasis added).

¶ 12. Next, the legislature provides a procedure for property owners to contest condemnation, providing:

> When an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer *for any reason other than that the amount of compensation offered is inadequate,* such owner may . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant. Such action shall be *the only manner in which any issue other than the amount of just compensation or other than proceedings to perfect*

261

*title . . . may be raised pertaining to the condemnation of the property* described in the jurisdictional offer. The trial of the issues raised by the pleadings in such action shall be given precedence over all other actions in said court then not on trial.

WIS. STAT. § 32.06(5) (emphasis added).

¶ 13.   The Wallers emphasize that the only opportunity under the statutory condemnation scheme for a property owner to seek a declaration that the taking results in an uneconomic remnant and to challenge the taking on grounds the uneconomic remnant is unaccounted for is under WIS. STAT. § 32.06(5). Indeed, the plain language of the statute sweeps everything but "just compensation" under its cover. The confusion here stems from the fact that the question of the existence of an uneconomic remnant is difficult to separate from the determination of the value of the remnant. By its very name, an uneconomic remnant seems to require valuation.

¶ 14.   The Wallers are persuasive in their assertion that the two questions must be separated. As they observe, before compensation can be set, there must be a determination of what is being taken. In *Arrowhead Farms, Inc. v. Dodge County*, 21 Wis. 2d 647, 651, 124 N.W.2d 631 (1963), the court explained that procedural issues must be resolved before an administrative body or a court calculates compensation. In *Rademann v. DOT*, 2002 WI App 59, ¶ 37, 252 Wis. 2d 191, 642 N.W.2d 600, we agreed and stated that, pursuant to WIS. STAT. § 32.06(5), all issues other than that of just compensation must be presented to the circuit court within forty days of receipt of the jurisdictional offer.[4]

---

[4] Both *Arrowhead Farms, Inc. v. Dodge County*, 21 Wis. 2d 647, 124 N.W.2d 631 (1963), and *Rademann v. DOT*, 2002 WI App

This permits the court and the commission to "devote full attention" to the crucial issue of just compensation "without having the deliberation deflected into consideration of collateral procedural matters." *Rademann,* 252 Wis. 2d 191, ¶ 38. These principles are reflected in the plain language of § 32.06(3m), which requires the condemnor to make a *concurrent* offer to purchase or condemn an uneconomic remnant. The legislature made it clear that the property owner must be told of the scope of the acquisition before the question of compensation is negotiated.

¶ 15.  A property owner who is left with a substantially diminished parcel of unencumbered property must have the right to contest a condemnation that does not acknowledge an uneconomic remnant. Here, the Wallers are challenging the right to condemn the property as described by ATC in the jurisdictional offer. The only statute that provides the property owner with a forum for asserting such a right is WIS. STAT. § 32.06(5). The declaration of an uneconomic remnant triggers the condemnor's duty to offer to acquire the remnant concurrently, giving the property owner the opportunity to consider the offer in its totality. *See* § 32.06(3m). Furthermore, the existence of an uneconomic remnant also implicates other property owner rights such as relocation benefits under WIS. STAT. § 32.19, which the property owner may then consider.

¶ 16.  The declaration of an uneconomic remnant is not a meaningless exercise swallowed up in the compensation process, but a separate pursuit by a

59, 252 Wis. 2d 191, 642 N.W.2d 600, refer to WIS. STAT. § 32.05(5) rather than the more recent WIS. STAT. § 32.06(5) for granting property owners the right to contest the condemnation in court. The relevant text is unchanged. *See* § 32.05(5) (1999–2000).

property owner to protect his or her rights. The legislature created this statutory scheme to "provide[] an orderly method of resolving the disputes involved in the exercise of the eminent-domain power." *Arrowhead Farms*, 21 Wis. 2d at 651. Bringing an action to declare an uneconomic remnant is just the type of procedural matter that is meant to be resolved prior to addressing the adequacy of compensation.

## CONCLUSION

¶ 17.  We conclude that the plain language of WIS. STAT. § 32.06(5) and (3m) makes the legislative intent clear. A property owner is authorized to contest a condemnor's right to condemn under § 32.06(5). This authorization includes the property owner's right to contest the proposed taking because it results in an uneconomic remnant. Therefore, the circuit court erred when it dismissed the Wallers' complaint on the merits. We remand to the circuit court, directing it to reinstate the complaint and to make a determination whether ATC's taking creates an uneconomic remnant as that term is defined in § 32.06(3m). If so, ATC is required, under § 32.06(3m), to make a concurrent offer for the remnant and to provide relocation benefits as directed by WIS. STAT. § 32.19.

*By the Court.*—Order reversed and cause remanded with directions.