Scott N. WALLER and Lynnea S. Waller,
Plaintiffs-Appellants,

v.

AMERICAN TRANSMISSION CO., LLC,
Defendant-Respondent.

Court of Appeals

*No. 2010AP1447. Submitted on briefs March 30, 2011.*
*—Decided May 25, 2011.*

2011 WI App 91

(Also reported in 799 N.W.2d 487.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Hugh R. Braun* of *Godfrey, Braun & Frazier, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Katherine Stadler* and *Bryan J. Cahill* of *Godfrey & Kahn, S.C.*, Madison.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J.    Scott and Lynnea Waller had part of their property taken by American Transmission Co. (ATC) to allow ATC to construct a high voltage transmission line. The Wallers filed an action under Wis. Stat. § 32.06(5) (2009–10)[1] contesting the partial taking, alleging that their property after the taking was an "uneconomic remnant" as defined in § 32.06(3m).

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 2. This appeal addresses the procedure to be utilized by circuit courts in eminent domain proceedings when a partial taking is sought by the condemnor and a property owner has raised the question of whether he or she will be left with an "uneconomic remnant" should the partial taking occur. We hold that when a property owner properly raises the issue of whether he or she will be left with an uneconomic remnant pursuant to WIS. STAT. § 32.06(3m), a circuit court must first hold an evidentiary hearing under § 32.06(5) to determine whether the remaining parcel is an uneconomic remnant. A fact finder may not determine just compensation until the circuit court has resolved the full scope of the taking.

¶ 3. This matter returns to us for the second time. In *Waller I* we held that a property owner is entitled to contest a taking on the grounds that the taking would leave him or her with an uneconomic remnant. *Waller v. American Transmission Co., LLC*, 2009 WI App 172, ¶ 17, 322 Wis. 2d 255, 776 N.W.2d 612 (*Waller I*). On remand, we directed the circuit court to reinstate the Wallers' complaint and to determine whether ATC's proposed partial taking would create an uneconomic remnant under WIS. STAT. § 32.06(3m). *Waller I*, 322 Wis. 2d 255, ¶ 17. The circuit court, however, ordered that the amount of damages from the partial taking was to be determined by a jury before the court determined whether the Wallers were left with an uneconomic remnant. We again reverse and remand.

## FACTS

¶ 4. The Wallers own a 1.5 acre triangular property adjacent to I-43 in Walworth County.[2] ATC ob-

---

[2] We admonish the Wallers' counsel for his failure to provide record citations, in violation of our rules of appellate procedure. *See* WIS. STAT. RULES 809.19(1)(d)-(e) and 809.19(4)(b). The

tained State approval to condemn the property to construct a high voltage transmission line. ATC needed to acquire two forty-five foot utility easements, which according to ATC's own appraiser, would require ATC to take over half of the Wallers' property and would render the residential improvement to the property "totally obsolete." Going forward, the appraiser concluded that the highest and best use of the remnant left to the Wallers would be as "vacant industrial land."

¶ 5. WISCONSIN STAT. § 32.06(2a) requires that prior to making a jurisdictional offer, a condemnor must negotiate with the property owner for the purchase of the property. On March 14, 2008, ATC offered to purchase the easements for $99,500, or the entire property for $132,000 if the Wallers agreed to waive their relocation benefits under WIS. STAT. § 32.19(3). The Wallers declined both offers.

¶ 6. On March 20, 2008, ATC served the Wallers with a jurisdictional offer of $99,500 for the partial taking of the Wallers' property, per WIS. STAT. § 32.06(3). The Wallers responded by filing a complaint under § 32.06(5) contesting ATC's right of condemnation.[3]

appellants' brief and reply brief contain numerous factual assertions without the support of record citations. It is not our obligation to search the record to support an argument. Counsel is advised to be mindful of rules of appellate procedure when filing a brief.

[3] WISCONSIN STAT. § 32.06(5) provides a procedure for property owners to contest a proposed condemnation. The relevant portion of the statute states:

> When an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer for any reason other than that the amount of compensation offered is inadequate, such owner may . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant. Such action shall be the only manner in

The Wallers alleged that ATC was required to purchase their entire property because the portion of the Wallers' property left after the taking would be an uneconomic remnant as defined in § 32.06(3m).

¶ 7. The Walworth County condemnation commission determined that the proposed partial taking reduced the Wallers' property value from $130,000 to $40,000. It thus issued an award of $90,000 in damages. The Wallers appealed the commission's award to the circuit court pursuant to WIS. STAT. § 32.06(10). The litigation thereafter split into two cases: one lawsuit dealt with whether ATC's partial taking left the Wallers with an uneconomic remnant (uneconomic remnant case) and the other lawsuit was over the value of the property (just compensation case). On November 5, 2008, the circuit court dismissed the uneconomic remnant case after it determined that the Wallers could not raise the uneconomic remnant issue in a § 32.06(5) proceeding. The Wallers appealed and we reversed, holding that a property owner is entitled to contest a taking on the grounds that the taking would leave the property owner with an uneconomic remnant. *Waller I*, 322 Wis. 2d 255, ¶ 17.

¶ 8. Following remand from this court, the Wallers submitted a pretrial "data sheet" that arrayed the anticipated evidence they would submit to demonstrate that their remaining property was an uneconomic remnant. The Wallers were prepared to of-

which any issue other than the amount of just compensation or other than proceedings to perfect title . . . may be raised pertaining to the condemnation of the property described in the jurisdictional offer. The trial of the issues raised by the pleadings in such action shall be given precedence over all other actions in said court then not on trial.

*Id.*

fer: (1) testimony from their appraiser and ATC's appraiser that the residential value of the Wallers' improvements was destroyed by the taking; (2) statements from the department of commerce that the taking "dramatically changed the nature and character" of the Wallers' property and that the Wallers were entitled to relocation benefits; and (3) testimony from the director of public works for the City of Delavan that the property can no longer be improved for commercial purposes without access to sewer and water, which would require a nearly $41,000 cost to annex into the City of Delavan.

¶ 9. The circuit court subsequently decided that for reasons of judicial economy it would wait to schedule an evidentiary hearing on the uneconomic remnant case until after the jury returned a verdict in the just compensation case. The court stated that after the jury determined the amount of just compensation, the court would then conduct an evidentiary proceeding to determine if the Wallers were left with an uneconomic remnant. Additionally, the court stated that it would use the testimony and exhibits from the just compensation case, but that at its discretion it would also allow the parties to offer additional evidence that the Wallers' property was an uneconomic remnant. The Wallers objected to this scheduling order, but to no avail.[4]

¶ 10. The jury in the just compensation trial awarded the Wallers $94,000 in damages after deter-

---

[4] The Wallers sought mandamus relief from this court and argued that the circuit court was violating our decision in *Waller v. American Transmission Co, LLC.*, 2009 WI App 172, ¶ 17, 322 Wis. 2d 255, 776 N.W.2d 612 (*Waller I*), by allowing a jury trial in the just compensation case to take place before the circuit court determined if the Wallers were left with an uneconomic remnant. We declined the petition.

mining that the value of the property declined from $132,000 to $38,000 as a result of the partial taking. After the jury verdict was returned, the circuit court denied an evidentiary hearing in the uneconomic remnant case, ruling that because the jury found the property to be worth more than $0, the Wallers' remaining property was not an uneconomic remnant. The circuit court subsequently entered a judgment dismissing the Wallers' uneconomic remnant lawsuit. The Wallers appeal.

## STANDARD OF REVIEW

█

¶ 11.  This case requires us to examine the condemnation procedures under Wis. Stat. § 32.06. The issue presented is:   when a property owner is subject to a partial taking and argues that his or her remaining property is an uneconomic remnant under § 32.06(3m), must the circuit court first determine whether the remaining property is an uneconomic remnant before a jury determines the value of the remaining property? Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo. *Waller I*, 322 Wis. 2d 255, ¶ 10.

## DISCUSSION

¶ 12.  From the outset, the underlying dispute between the parties has been whether the land left to the Wallers after the partial taking is an uneconomic remnant. An uneconomic remnant is defined as "the property remaining after a partial taking of property, if the property remaining is of such size, shape or condition as to be of little value or of substantially impaired economic viability." Wis. Stat. § 32.06(3m). If a partial

taking leaves the property owner with an uneconomic remnant, "the condemnor shall offer to acquire the remnant concurrently and may acquire it by purchase or by condemnation if the owner consents." *Id.*

¶ 13. The issue in this case, however, is not whether the Wallers' remaining parcel is an uneconomic remnant; the question presented, rather, is at what point in the eminent domain proceedings must a court make the determination that a property is an uneconomic remnant. In *Waller I*, ATC argued that the Wallers could not raise the uneconomic remnant issue in a WIS. STAT. § 32.06(5) proceeding. *Waller I*, 322 Wis. 2d 255, ¶¶ 4, 7. We disagreed, and concluded that "[t]he declaration of an uneconomic remnant is not a meaningless exercise swallowed up in the compensation process, but a separate pursuit by a property owner to protect his or her rights." *Id.*, ¶ 16. We held that an action to declare an uneconomic right must be resolved prior to addressing the adequacy of compensation. *Id.*

¶ 14. In *Waller I*, we acknowledged the difficulty of separating the question of the existence of an uneconomic remnant from the determination of the value of the remnant. *See id.*, ¶ 13. Whether a property is an uneconomic remnant, however, is not just a question of value—a circuit court must also determine whether the property is "of substantially impaired economic viability." WIS. STAT. § 32.06(3m). Here, the circuit court failed to address whether the Wallers' remaining property was "substantially impaired" as to its economic viability. The circuit court focused only on the first part of § 32.06(3m) —the "little value" component—rather than addressing the full scope of the statute. Furthermore, the court precluded the parties from even presenting evidence on the issue of whether the Wallers' property is an uneconomic remnant.

747

¶ 15. Whether the remaining property after a partial taking has "little value" or is "of substantially impaired economic viability" is a factual question for the circuit court to resolve. A $10 million property subjected to a partial taking leaving a $100,000 property might be an uneconomic remnant, whereas the partial taking of a $150,000 property leaving a $100,000 property might not be an uneconomic remnant. The reverse could also be true depending upon the facts and circumstances of each case. Contrary to what the circuit court stated, the inquiry does not end once the dollar value of the remaining property is determined—a circuit court is also expected to examine whether the partial taking "substantially impaired [the] economic viability" of the property.

¶ 16. Our holding that a court must first determine whether a property is an uneconomic remnant before moving on to the just compensation issue is bolstered by the text of Wis. Stat. § 32.06(5) and case law. When a property owner contests a condemnation in circuit court under § 32.06(5), "such action shall be given precedence over all other actions in said court then not on trial." *Id.* As an uneconomic remnant claim is properly brought in a § 32.06(5) action, *see Waller I*, 322 Wis. 2d 255, ¶ 17, a court must prioritize an uneconomic remnant determination over a just compensation determination. Additionally, in *Waller I* we cited to case law that explained that "procedural issues must be resolved before an administrative body or a court calculates compensation." *Id.*, ¶ 14 (citing to *Arrowhead Farms, Inc. v. Dodge County*, 21 Wis. 2d 647, 651, 124 N.W.2d 631 (1963), and *Rademann v. DOT*, 2002 WI App 59, ¶¶ 37–38, 252 Wis. 2d 191, 642

N.W.2d 600). The reason for this is to allow the circuit court or the local condemnation commission to devote its full attention to the just compensation issue without being distracted by collateral procedural matters. *Waller I*, 322 Wis. 2d 255, ¶ 14.

## CONCLUSION

■

¶ 17.   As the Wallers were entitled to a determination of whether their remaining property is an uneconomic remnant as defined in Wis. Stat. § 32.06(3m) prior to the just compensation phase of the eminent domain proceedings, we reverse and remand for a § 32.06(5) hearing and proceeding consistent with this decision. If the circuit court finds that the Wallers' property is an uneconomic remnant, the jury's just compensation verdict is vacated.

*By the Court.*—Judgment reversed and cause remanded with directions.